225 So.2d 607 (1969)
Edward ALLEMAN
v.
Harry GUILLOT.
No. 7740.
Court of Appeal of Louisiana, First Circuit.
July 2, 1969.
Rehearing Denied August 28, 1969.
*608 Caillouet & Wise, by Jack Wise, Thibodaux, for appellant.
Doyle, Smith, Doyle, Gordon, Arata & Watters, by Blake G. Arata, New Orleans, for appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
This action seeks the nullity of a default declaratory judgment rendered in favor of defendant herein, Harry Guillot, recognizing and declaring said Guillot owner of an undivided interest in the hereinafter described property situated in Assumption Parish. The alleged grounds of nullity are fraud, ill practice and failure to join certain indispensable parties. The trial court sustained defendant Guillot's exception of no cause of action upon finding plaintiff's petition failed to charge fraud or ill practice as a matter of law. From that decision plaintiff has appealed. We concur in the decision rendered below. The trial court did not, however, pass on plaintiff's contention that the judgment complained of should be reversed because of plaintiff's failure to join certain alleged indispensable parties hereinafter mentioned. We conclude the failure to join said parties is not ground for reversal of the judgment rendered below.
In the interest of clarity, plaintiff herein, Edward Alleman (defendant in Guillot's suit for declaratory judgment), will sometimes hereinafter be referred to as "Alleman" and this action as the "Alleman suit." For the same reason, defendant herein, Harry Guillot, will sometimes hereinafter be designated simply as "Guillot" and his declaratory judgment action as the "Guillot suit."
*609 It is elementary that for purposes of Guillot's exception of no cause of action, all well pleaded allegations in Alleman's petition must be accepted as true. Therefore, the inquiry in this regard, insofar as concerns the case at hand, is whether the facts alleged by Alleman constitute ground for nullity as set forth in LSA-C.C.P. Article 2004; Hall v. Hall, La.App., 127 So. 2d 347, and cases therein cited.
The petition herein alleges as fact the circumstances, events and occurrences which we proceed to relate in narrative form.
The petition in the Guillot suit prayed for a declaratory judgment against Alleman and the latter's eight brothers and sisters and collateral heirs (collectively referred to as "the Allemans"), recognizing and decreeing Guillot's ownership of the following described property:
A certain tract of land situated in the Parish of Assumption, State of Louisiana, having eight (8) arpents front on the southern boundary line of the northwest quarter of Section 38, Township 12 South, Range 13 East, extending from the western boundary of the Township east along said southern boundary for eight (8) arpents and by a depth between parallel lines to the whole depth of said quarter section. Said tract being bounded west by township line, north by northern boundary line of Section 38, south by southern boundary line of northwest quarter of Section 38, east by remainder of the northwest quarter of said Section 38. Being a portion of the same property acquired by Murville Campo by act dated April 1, 1855, duly recorded in Conveyance Book 21, Page 416 of the Conveyance Records of Assumption Parish, Louisiana.
The judgment rendered in Guillot's suit recognized his ownership of an undivided interest in the above described property but excepted therefrom a tract described as follows:
LESS AND EXCEPT:
A portion thereof sold by Murville Campo to Leandre Hebert by act of sale dated July 3, 1855, recorded in C.O.B. 23, Page 31 of the Conveyance Records of Assumption Parish and being more particularly described as bounded on the south by Louisiana State Highway No. 170, on the East by Harry Guillot and on the north and west by Bayou Pierre Part.
Subject property (the Campo tract), presently consisting of several ownerships, was purchased as a unit by Murville Campo on April 21, 1855. Both Guillot and Alleman deraign their title from the Campo acquisition. On July 3, 1855, Campo sold to Arcene Blanchard a portion of the subject property (the Blanchard tract) containing 28.80 arpents situated on the west side of Bayou Pierre Part and described as follows:
A tract of land situated in this Parish being the portion of quarter Section No. 38 Township No. 12 Range No. 13 East which is located west of Bayou Pierre Part, measuring twenty eight arpents 80/100 insuperficies, according to figurative plan of said quarter section now in the hands of the parties.
The same day as the Blanchard sale, Campo sold Leandre Hebert part of the Campo tract containing 34 arpents (the "Hebert tract"), situated on the east bank of Bayou Pierre Part. Said Hebert tract, being the same property excepted from Guillot's declaratory judgment, is presently owned by Alleman, or his assigns.
Yet other portions of the Campo tract, described as lying west of Bayou Pierre Part and adjoining the Blanchard tract on the north, belong to the Russo-Savoie heirs who were not made parties in the Guillot suit.
The Allemans' title to the Blanchard tract is deraigned from Arsene Blanchard who was married but once and then to Naomi Breaux, of which union only one child *610 was born, namely, Alice Blanchard, who inherited the Blanchard tract upon the death of her said parents. Alice Blanchard was married but once and then Oscar Alleman, of which espousal ten children were born. Upon the death of Alice Blanchard Alleman, the Blanchard tract was inherited by her nine surviving children (including Alleman), two of whom, Amelia Alleman Templet and Ebdon Alleman, have since died leaving eleven and six children, respectively, who inherited their said parents' interests in the Blanchard tract. One of the children of Alice Blanchard Alleman died, having never married and leaving no issue.
Subsequent to rendition of judgment in the Guillot suit on September 1, 1967, Alleman acquired the interest of all the Alleman heirs in the Blanchard tract except the 1/9 interest of his brother Armand; the 1/54th interest of Edna Alleman, a major incapacitated by insanity, and the 1/126th interest of the unemancipated minor ____ ____ Templet (sic). Both said minor and incapacitated major were made parties defendant in the Guillot suit.
The Allemans and their ancestors in title have enjoyed continuous, uninterrupted, open and peaceable possession of the Blanchard tract from date of acquistion by their ancestor in 1855 until institution of the Guillot suit. In 1963 Guillot attempted to take possession of a small portion of land situated in the southeast corner of the original Campo tract but not situated within the Blanchard tract. Subsequently Guillot filed a possessory action against Alleman claiming ownership by deed of the entire Campo tract which action resulted in judgment adverse to Guillot and favorable to Alleman. Later, on December 10, 1965, Guillot filed his action for declaratory judgment, service of process being immediately made therein only on Alleman. In the Guillot suit interrogatories were filed on Alleman for disclosure of the names and addresses of Alleman's alleged co-owners and the basis for their respective claims. Alleman answered said interrogatories detailing the names of his co-owners, specifying the sources of their titles. He also related their continuous possession of the Blanchard tract. Simultaneously, Alleman filed a peremptory exception of non-joinder of indispensable parties naming therein 43 persons or groups of persons who claim ownership in the several parcels of land involved in Guillot's suit. Guillot responded by amending his petition to include as defendants the persons named by Alleman as co-owners of the Blanchard tract. Guillot did not join as parties the persons named by Alleman as owners of the tracts other than the Blanchard tract, particularly the Russo and Savoie heirs. Alleman's exception of non-joinder was never tried by the lower court and is presently pending therein. No defendant in the Guillot suit except Alleman made any appearance therein. With the record in the Guillot suit in the condition above noted, default judgment was rendered therein on September 10, 1966, in favor of Guillot and against all named defendants except Alleman. The decree recognized Guillot as owner of all the Campo tract excepting the Leandre Hebert tract, thus in effect declaring Guillot owner of the Russo-Savoie tracts and all of the Blanchard tract excepting Alleman's 1/9th interest therein.
More than 90 days after rendition of judgment in the Guillot suit, Guillot instructed the Clerk of the trial court to serve notice of judgment upon those defendants in his action required by law to be given such notice. All of the Alleman heirs, except plaintiff herein, Edward Alleman, lived elsewhere. They are persons of limited means and little education. One was insane; one more than 90 years of age; several were in their 70's and 80's; none possessed more than a 1/9th interest in the Blanchard tract and some as little as a 1/252nd interest. All relied on Alleman to look after their interests in the Blanchard tract.
Predicated on the foregoing events and circumstances, appellant asserts Guillot, knowing full well he had no title to the *611 Blanchard tract, submitted a false chain of title to the trial court in proving up his default judgment. The title established was false because (1) it intentionally neglected to inform the court of the warranty sale from Campo to Arcene Blanchard, the Allemans' ancestor in title, which transfer was binding on Campo's successors, including Guillot; (2) the transfer to Blanchard had never been attacked by Campo or any one else claiming through him adversely to the Allemans; (3) Blanchard's ownership was continuously recognized by Campo, his heirs and assigns, as valid, and (4) Guillot knowingly refrained from informing the lower court of the Allemans' continuous possession of the Blanchard tract since its acquisition by Arcene Blanchard.
Additionally, appellant asserts ill practice on Guillot's part in waiting more than 90 days from rendition of judgment in his favor before having notice of judgment served on those defendants required to be given such notice by law, namely, those not personally served. It is maintained that as a result of this stratagem, the delays for taking an appeal were allowed to run against those defendants with regard to whom the delay commenced immediately upon rendition of judgment before serving notice of judgment on those with respect to whom notice was required. It is specifically charged that this tactic was resorted to because had notice of judgment been served immediately on those respondents required to be given such notice, they might have alerted the remaining defendants and prompted appeals within 90 days by those defendants who had only a 90 day delay from the signing of judgment in which to appeal. It is asserted that thus those defendants who had no notice of judgment were effectively denied their right of appeal.
LSA-C.C.P. Article 2004 provides a final judgment may be annulled for fraud or ill practice. The numerous authorities cited by appellant in support of his charge of fraud and ill practice may be briefly categorized as follows: Brown v. South Street Lumber Co., La.App., 195 So.2d 650, use of an erroneous affidavit regarding an agent's alleged authority to purchase building materials; Adkins' Heirs v. Crawford, Jenkins & Booth, 200 La. 561, 8 So.2d 539; Foltz v. Foltz, La.App., 197 So.2d 376, and Dare v. Myrick, La.App., 168 So.2d 845, perjury by a litigant in whose favor judgment was rendered; Noyes v. Loeb, 24 La. Ann. 48; State ex rel. Sunseri v. Thoman, La.App., 154 So.2d 480, dealing with payment of a debt sued upon; Hall v. Hall, La. App., 127 So.2d 347, in which fictitious mortgages were the basis of claim, and Beauchamp v. McMicken, 7 Mart. (N. S.) 605; Nessans v. Colomes, 130 La. 375, 57 So. 1010, and Sturgis v. Gulfco Finance Company of West Monroe, La.App., 147 So.2d 782, all dealing with forged notes or documents.
The applicable rule is that fraud which justifies annulment of a judgment is not confined to conduct which is fraudulent in the strict sense of the term. The provisions of LSA-C.C.P. 2004 are not limited to cases of actual fraud or intentional wrongdoing but encompasses those situations wherein judgment is obtained through some improper practice or procedure which operates, even innocently, to deprive the party cast of some legal right, and where enforcement of the judgment would be unconscientious and inequitable. St. Mary v. St. Mary, La.App., 175 So.2d 893, and authorities therein cited.
Each such case must be considered from the viewpoint of whether under its own peculiar circumstances, it would be inequitable or unconscionable to permit the judgment to stand considering the procedure or practice employed therein. Dare v. Myrick, La.App., 168 So.2d 845, and cases therein cited.
Also applicable herein is the well established principle that an action of nullity may not be substituted for nor take the place of an appeal. Romero v. Galley, La. App., 79 So.2d 625.
*612 In confirming judgment by default plaintiff is not obligated to disclose possible defenses which may be raised by his adversary in the event he makes an appearance. Scruggs v. Butler Furniture Co., Inc., La.App., 104 So.2d 178. Neither does the fact that a plaintiff presents merely his own version of the controversy and fails to disclose a contrary position or view held by defendant, constitute fraud or ill practice, provided he does not present his contentions on false, fabricated or perjured testimony. Romero v. Galley, La. App., 79 So.2d 625.
The claims of fraud made herein are not supported on the face of plaintiffs' allegations. Viewed in its most liberal light, plaintiff's petition concedes Guillot deraigned record title from the common ancestor, Murville Campo. In essence the fraud charged is the alleged failure to disclose the adverse chain and claim of the Allemans emanating from the same source and possession of the Allemans pursuant thereto. There is no charge here of forged title or perjured testimony, merely the accusation that Guillot failed to adduce evidence favorable to his adversaries. Assuming the verity of the declaration, it does not appear any defendant in the Guillot suit was thereby procedurally deprived of the legal right or opportunity to assert any defense or position available to them. On the contrary, it appears defendants' failure to assert said defenses and positions resulted from their own voluntary decision not to defend the action rather than from the procedure indulged in by Guillot as plaintiff in the suit.
We also find no merit in the contention that ill practice resulted from Guillot's waiting more than 90 days from the date of the judgment to serve notice of judgment on those defendants required by law to be served in order to commence running of the delay for appeal. We fail to see wherein this prejudiced the right of any defendant who was not entitled to notice and against whom the appeal delays commenced to run upon signing of the judgment. Those defendants not entitled to notice of judgment had been personally served, and were therefore presumed to have notice of the judgment from the date of its signing.
The alleged nullity of the judgment rendered in the Guillot suit insofar as it affects the interests of the minor __________ ___ Templet (sic) and the incapaciated major, Edna Alleman, is a matter we cannot adjudicate herein considering neither of said persons are parties to this proceeding.
Assuming Guillot's failure to join the Russo and Savoie Heirs in his declaratory judgment suit constituted procedural error, it forms no basis for reversal of the default judgment rendered therein against those defendants who were properly joined therein. An indispensable party not joined in an action is not bound by the decree rendered therein. Humble Oil and Refining Company v. Jones, 241 La. 661, 130 So.2d 408. It is essential, however, that an indispensable party be cited in an action when his existence and claim are evident. Humble Oil & Refining Company, supra. The obvious reason for the rule is the avoidance of multiple trials, consequently indispensable parties must be joined when they are known. Where, however, a matter is duly tried and judgment rendered as regards certain parties defendant, such judgments are valid and binding notwithstanding failure to join other indispensable parties. No notice was required to be given these parties either that the judgment was about to be rendered against them or that it had in fact been rendered. Where notice is not required, failure to give same does not constitute ill practice. Jourdan v. Hutton, La.App., 86 So.2d 223. The delay for appeal allowed those defendants not requiring notice of judgment was in no wise adversely affected. These parties still possessed the statutory delay of 15 days for taking a suspensive appeal and 90 days for appealing devolutively. As to those requiring notice, the delays for appealing did not *613 commence to run until each was served with notice.
LSA-C.C.P. Article 1701 provides that when a defendant in either the principal or incidental action fails to answer within the time prescribed by law, judgment by default may be rendered against him. If one of several defendants fails to answer timely, judgment may be taken against him by default prior to trial on the merits contradictorily with remaining defendants who answered timely. Vehrs v. Jefferson Insurance Company, La.App., 168 So.2d 873.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.