376 So.2d 972 (1979)
Collis B. TEMPLE, Jr.
v.
Michael E. JACKSON et al.
No. 12791.
Court of Appeal of Louisiana, First Circuit.
October 8, 1979.
*973 Gail Horne Ray, Baton Rouge, of counsel, for plaintiff-appellee Collis B. Temple, Jr.
Patrick F. McGrew, Baton Rouge, of counsel, for defendants-appellants Michael E. Jackson, et al.
Before ELLIS, CHIASSON and PONDER, JJ.
CHIASSON, Judge.
This is an appeal from a judgment which annulled a confirmation of a default judgment. The default judgment was rendered November 3, 1977, in the suit entitled "Michael E. Jackson, et al. v. Collis B. Temple, Jr.," No. 205,897 of Division I, Nineteenth Judicial District Court. (Jackson v. Temple). Jackson v. Temple was a suit on a contract for the purchase of property, and the confirmation of default judgment awarded money damages to the plaintiffs in that suit, Michael E. Jackson and Peter Terhoeve.
Collis B. Temple, defendant in the default judgment and plaintiff and appellee in the instant case, sued Michael E. Jackson and Peter Terhoeve to annul the November 3, 1977 judgment on two grounds: (1) Temple had not been served with process and had not made a general appearance, and (2) fraud and ill practices of both defendants in obtaining the November 3, 1977 judgment.
The lower court annulled the November 3, 1977 judgment on the basis that there was no service of process on Collis Temple.
The specifications of error of appellants, Jackson and Terhoeve, all deal with one issue: the trial court's error in finding that there was no service as required by law on Collis Temple. We find the trial court to be clearly wrong in its findings as to service of process.
La.C.C.P. art. 2002(2) states, in pertinent part, that a final judgment shall be annulled if it is rendered against a defendant who has not been served with process as required by law and who has not entered a general appearance. Under the provisions of La.C.C.P. art. 1231, service of citation or other process may be either personal or domiciliary. "Personal service" is defined as made when a proper officer tenders the citation or other process to the person to be served. La.C.C.P. art. 1232. "Domiciliary service" is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing therein as a member of his domiciliary establishment. La.C.C.P. art. 1234.
In the suit of Jackson v. Temple, service of process was made at 1285 Laurel, Baton Rouge, Louisiana, on Gerald Johnson on October 4, 1977.
Temple, in the instant case, argued that the judgment in Jackson v. Temple should be annulled because 1285 Laurel was not his domicile and, therefore, there was no proper citation upon him.
The question to be decided is: Was Temple domiciled at 1285 Laurel, Baton Rouge, Louisiana, at the time service was made of the Jackson v. Temple suit at that address? *974 If Temple was domiciled at 1285 Laurel, then service of process was proper and Temple could not annul the November 3, 1977 judgment on the basis of La.C.C.P. art. 2002(2).[1]
There is no dispute in the record that prior to September 18, 1977, Temple's domicile was 1285 Laurel. On September 18, 1977, Temple left Baton Rouge to go to Buffalo, New York, under a contract of employment with the Buffalo Braves Professional Basketball Club, a National Basketball Association franchise.
Temple argued that he changed his domicile to Buffalo, New York. The law is well settled that the party who seeks to establish a change of domicile bears the burden of proving it. In re Kennedy, 357 So.2d 905 (La.App. 2nd Cir. 1978).
As long as there is any doubt concerning whether a change of domicile has occurred, there is a presumption that it has not been changed. Succession of Simmons, 109 La. 1095, 34 So. 101 (1903).
In establishing domicile, it is necessary to show actual residence in a place, an intent to remain indefinitely, and of abandoning the former domicile. In re Kennedy, supra, and the citations contained therein. Domicile is the place where a person has his true, fixed and permanent home and principal establishment (residence) and to which he intends to return whenever he is absent therefrom. Harrison v. Commission Council of Bogalusa, 169 So.2d 159 (La.App. 1st Cir. 1964). In establishing domicile, intent is based on actual state of facts and not what one declares them to be. Charbonnet v. Hayes, 318 So.2d 917 (La. App. 4th Cir. 1975), writ refused, 320 So.2d 201 (La.1975).
Under Temple's contract with the Buffalo Braves, he was required to be present at the ball club's camp, to train and to participate in exhibition games which required traveling. The contract also specified that either party could terminate the agreement with proper notice. Appellee testified that he went to New York intending to stay the full two years of the contract and more if another contract could be negotiated. Appellee also testified that he left intending to live in New York. The testimony reveals that appellee did, in fact, reside in New York. The only facts to show domicile of appellee in New York were his residence, his employment contract, and his testimony as to his intent.
The testimony shows that during the time appellee was in New York he had and maintained property holdings and bank accounts in Baton Rouge; mail for appellee was received at the Laurel Street address; his automobile was left in Baton Rouge; 1285 Laurel was owned by appellee and rented to two tenants; appellee's father handled his financial transactions while he was gone; and the 1285 Laurel address was available to him at any time should he want to live there. The appellee did not have his mail forwarded to New York and did not sign a contract to buy or lease a residence in New York.
Appellee was in New York approximately thirty-nine days; traveled with the ball club for several exhibition games; was cut from the team, thereby terminating his contract; and returned to 1285 Laurel to live. The appellee testified that he had played professional basketball for several other teams, each time making his residence and domicile elsewhere and when the contracts expired, he came back to Louisiana to live, each time at a different residence.
The trial court was clearly wrong in its determination of appellee's domicile. Under the jurisprudence cited, La.C.C. art. 38, and the facts of this case, we find that appellee did not carry his burden of proof in showing change of domicile and find that Collis Temple was domiciled at 1285 Laurel at the time service of process of the Jackson v. Temple case was made.
However, we affirm the decision of the trial court in annulling the November 3, 1977 judgment on other grounds.
*975 Appellee also sought annulment of the November 3, 1977 judgment on the basis of fraud and ill practices on the part of each defendant. Under La.C.C.P. art. 2004, a final judgment obtained by fraud or ill practices may be annulled.
In Chauvin v. Nelkin Insurance Agency, Inc., 345 So.2d 132 (La.App. 1st Cir. 1977), writ refused, this court approvingly quoted:
"As we stated in Alleman v. Guillot, 225 So.2d 607 (La.App. 1st Cir. 1969):
`(1) The applicable rule is that fraud which justifies annulment of a judgment is not confined to conduct which is fraudulent in the strict sense of the term. The provisions of LSA-C.C.P. 2004 are not limited to cases of actual fraud or intentional wrongdoing but encompasses those situations wherein judgment is obtained through some improper practice or procedure which operates, even innocently, to deprive the party cast of some legal right, and where enforcement of the judgment would be unconscientious and inequitable. St. Mary v. St. Mary, La.App., 175 So.2d 893, and authorities therein cited.
`Each such case must be considered from the viewpoint of whether under its own peculiar circumstances, it would be inequitable or unconscionable to permit the judgment to stand considering the procedure or practice employed therein. Dare v. Myrick, La.App., 168 So.2d 845, and cases therein cited.'"
An ill practice which justifies an annulment of a judgment ". . . encompasses situations where the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief if the enforcement of the judgment would be unconscionable and inequitable even though no actual fraud or intentional wrong is shown in the procurement of the judgment." Collins v. Collins, 325 So.2d 773 (La.App. 2nd Cir. 1976).
Appellee urged fraud and ill practices on the part of both defendants. The judgment of November 3, 1977, awarded separate money amounts to each defendant. The February 26, 1979 judgment annulled the November 3, 1977 judgment and both defendants have appealed. We will deal with each defendant separately as to the charges of fraud and ill practices.
Defendant, Peter Terhoeve, was the real estate broker whose agent handled the purchase agreement between Temple and Jackson. He joined in the suit with Jackson arguing that because the purchase agreement was breached under the terms of that contract, Temple owed him a commission. Mr. Terhoeve testified at the confirmation of default that he was familiar with the transaction and had dealt with both parties to the agreement. In order for Terhoeve to prove a prima facie case for a confirmation of default, he had to show that there was a purchase agreement negotiated by his agent; each party was able to perform the contract, the contract was breached; and what damages were owed under the contract.
Terhoeve testified at the confirmation of default hearing as to the existence of a purchase agreement, which was introduced into evidence. He testified Temple was able to fulfill the contract because Temple had an appraisal of the property in question made before the purchase agreement was signed and that Louis L. Eames Sr., of First Federal Savings and Loan had told Terhoeve that Temple had applied for and been approved for a loan to purchase the property. He testified that the contract was breached when Temple decided he did not want to buy the property and what the damages were under the contract.
At the hearing to annul the November 3, 1977 judgment, the entire record and transcript of the confirmation of default was introduced into evidence. Temple testified at the hearing on annulment that he had never had an appraisal made of the property because as he understood the status of the rental income from the property, the tenants would pay utilities. However, after talking with the tenants, he found out that some of them did not pay the utilities, which would mean that the rental income and cash flow on the property would be reduced. He testified he informed Terhoeve about these facts.
*976 Louis L. Eames, Sr., managing officer of the First Federal Savings and Loan Association, testified that he oversees all the duties of the association, accepts most loan applications, closes most of the loans, and has responsibility for the control of the loan records of his company. He testified that he was familiar with Temple's financial transactions because Temple had several loans with the company. Eames stated that Temple had given him a purchase agreement and asked Eames to hold onto it because Temple was considering having the property appraised.
Eames explained that no loan is approved without an appraisal of the property, a credit investigation and a sanction from the loan committee of the company.
Eames said that Terhoeve had called him about a loan Temple might have on the property which was the subject of the purchase agreement. He testified that because Temple had several loans with First Federal and he wanted to be certain of his answer to Terhoeve, he checked his file and found only the purchase agreement that Temple had left with him. To double check himself, Eames testified that he called the appraiser which the bank uses and asked if an appraisal had ever been made on the property in question. The response was negative. Mr. Eames stated that based on this, he could not have told Terhoeve that a loan had been applied for and approved by the bank.
We find from the testimony that at the confirmation of default Terhoeve misrepresented to the lower court the facts regarding Temple's ability to perform the contract. We find this misrepresentation was material in Terhoeve's obtaining the judgment in his favor. Even though this misrepresentation is not actual fraud or intentional wrong, we find that it does constitute an ill practice under the jurisprudence cited sufficient to warrant the annulment of the November 3, 1977 judgment as to Terhoeve.
Mr. Michael Jackson, the owner of the property, entered into a purchase agreement with Collis Temple to sell the property to him. Mr. Jackson sued Mr. Temple for breach of the purchase agreement asking for specific performance or, in the alternative, money damages. At the confirmation of default, Jackson was awarded $25,000 in damages.
Our review of the record convinces us that Jackson, one of the plaintiffs in the confirmation of the default, obtained his money judgment by an improper practice which deprived Temple of his legal rights and the enforcement of the judgment would be unconscionable and inequitable.
Mr. Jackson testified at the confirmation of default as to the damages he incurred because of Mr. Temple's breach of the contract. Mr. Jackson said his losses were as follows: the profit he would have received from the sale which was calculated as follows: the purchase price Mr. Temple agreed to pay minus the outstanding indebtedness on the property; the damages from his loss of the use of the profits from the sale to start a second business; the amount of money he had to borrow to open his second business and the interest on that loan; the amount paid on the notes including interest that he continued to pay on the property; and the cost of upkeep of the property. No other testimony or documents were entered into evidence to prove Mr. Jackson's items of damages at the confirmation of default. Additionally, we find that for all but two items, no specific money amount was specified and the method of calculation of lost profit is incorrect. The only positive statement about a specific money amount was Mr. Jackson's affirmative response to the following question posed by his attorney: "Would you say that the amount that you have prayed for, that is to say twenty-five thousand ($25,000) dollars, is reasonable compensation to yourself for the problems this has caused?" Transcript at the confirmation of default, page 24.
We have reviewed the testimony carefully and we find there was a total lack of evidence as to the damages Mr. Jackson sustained. We find this lack of evidence to be an ill practice as contemplated by the *977 jurisprudence cited sufficient to warrant the annulment of the November 3, 1977 judgment as to Mr. Jackson.
For these reasons, we affirm the decision of the trial court. All costs of this appeal are to be paid by appellants.
AFFIRMED.
NOTES
[1] The record reveals that service was left with a person of suitable age and discretion residing at 1285 Laurel as required by La.C.C.P. art. 1234.