60 So.2d 65

### HORN v. SKELLY OIL CO. et al.

No. 40534.

June 2, 1952.

Rehearing Denied July 3, 1952.

Gordon B. Golsan, Jr., Mansfield, for plaintiff-appellant.

Colvin & Hunter, Craig, Magee & Spann, Mansfield, for defendants-appellees.

McCALEB, Justice.

This case presents for determination the ownership of 7/8 of the mineral rights of a 412 acre tract of land situated in Sections 4, 5 and 8 of Township 12 N., Range 16 W., De Soto Parish, Louisiana. Plaintiff, the owner of an undivided 7/8 of the surface of the land,[1] instituted this suit under the Uniform Declaratory Judgments Act, LSA–R.S. 13:4231 through LSA–R.S. 13:4236, claiming that he has acquired, by various purchases and the extinguishment of a mineral servitude by nonuser, a total interest of 13/16 in all of the minerals under the property. And he prays, among

1. The other 1/8 surface ownership and also 1/8 of the minerals is conceded to belong to a minor, Frances Gill Humphrey, who is represented in these proceed-

other things, that he be declared the owner of the same and that the pretensions of the defendants, who are disputing his rights, be rejected. The defendants are plaintiff's immediate vendors or their heirs and Skelly Oil Company, the lessee of the entire mineral interest under leases granted by the other defendants.

The pleadings in the case, taken in conjunction with the exhibits attached thereto, reveal the following facts upon which the respective positions of the opposing litigants are founded:

On February 28, 1938, Federal Land Bank of New Orleans sold the land to S. W. McRae. This deed contains a mineral reservation which form the main disputed issue in the case.

On May 12, 1938, McRae sold 1/4 of his interest to Fred Humphrey and, on the same day, he sold another 1/4 interest to N. E. Sanders. On September 22, 1941, Fred Humphrey sold to his second wife, Vivia Story Humphrey, 1/4 of the interest he had acquired from McRae.

On January 22, 1943, Fred and Vivia Humphrey sold their undivided 1/4 interest in the property to plaintiff, reserving an undivided 1/4 of the minerals.

On November 5, 1943, N. E. Sanders sold to plaintiff the 1/4 interest which she acquired from McRae, retaining 1/4 of the minerals.

ings by Fred Humphrey, her duly qualified guardian in the State of Texas, where she resides.

On January 13, 1944, McRae and his wife sold to plaintiff an undivided one-half interest in the property, retaining and reserving an undivided 1/2 interest in and to all of the minerals.

On December 19, 1946, McRae, Sanders, Fred Humphrey and his minor daughter, Frances Gill Humphrey, and, on a later date, his second wife, Vivia Story Humphrey, granted mineral leases in favor of Skelly Oil Company.

It will be seen that, by the foregoing conveyances, plaintiff has acquired all of the surface rights of the property, save the 1/8 which admittedly belongs to the minor, Frances Gill Humphrey.[2] His claim herein to a large percentage of the mineral rights is based primarily on a reservation contained in the deed from the Federal Land Bank to McRae, which reads:

"There is excepted from this conveyance and reserved unto The Federal Land Bank of New Orleans a one-half interest in and to all minerals and mineral rights in and under the above described property. It is provided, however, that the purchaser is hereby granted the privilege of leasing the minerals and mineral rights, including the said reserved interest, without joinder of The Federal Land Bank of New Orleans on the following conditions, to-wit:—(1) That any lease or leases so granted will provide that a one-half of the usual royalty of one-eighth of all minerals be paid direct to The Federal Land Bank of New Orleans. (2) That one-half of all bonuses and rentals and one-half of the remaining royalties accruing to the purchaser under any such leases granted will be and are hereby assigned to the said Bank as long as the within Act of Sale and Mortgage is in force and effect with the agreement that the Bank will, upon receipt of such income, apply the same in the manner in which special payments are provided for therein. (3) That the remaining one-half of the bonuses and rentals and the remaining one-fourth of the royalties will be paid direct to the purchaser. (4) That upon payment in full of the indebtedness secured by the within Act of Sale and Mortgage, all income accruing under any mineral lease except one-half of the usual royalty of one-eighth of the minerals which is to be paid direct to The Federal Land Bank of New Orleans as hereinabove provided, shall be the property of the purchaser."

Plaintiff maintains that the above-quoted provision created a mineral servitude in favor of the Federal Land Bank; that this servitude was extinguished on February 28,

---

**2.** She acquired this 1/8 interest by inheritance from her mother, Frances Nowlin Humphrey, who was living at the time her father, Fred Humphrey, purchased a 1/4 interest in the land.

1948 because of nonusage for ten years and that, since he was the owner of the surface of the land, the mineral interest reverted to and vested in him.

Defendants, on the other hand, assert that the reservation of the Federal Land Bank did not establish a mineral servitude but was merely a mineral royalty which prescribed 10 years thereafter because of non-production and, being an appendage to the mineral interest, reverted to the holders thereof. They accordingly prayed that the Court declare this to be the effect of the reservation; also, that it be held that the royalty interest had lapsed and that the Court recognize their interests, in the proportions shown by their deeds, to be no longer subject to the royalty reservation.

After a hearing, the trial judge agreed with defendants' contentions entering a judgment decreeing them to be the owners and lessee of the minerals and further declaring that their mineral interests were not burdened with the royalty rights of the Federal Land Bank, as those rights had prescribed. Plaintiff has appealed.

■ At the outset, it seems clear that neither the claims of plaintiff nor those of defendants can be properly adjudicated without joinder of the Federal Land Bank as a party to the suit. Obviously, in order to grant the relief for which plaintiff prays, it must be determined that the mineral reservation, which he asserts to be a mineral servitude, has prescribed. But this cannot be done without citation of the Federal Land Bank, the party primarily affected. And, by the same token, the resolution of the judge, sustaining defendants' plea that the reservation is a mineral royalty which has been lost by reason of non-production during its 10 year existence, is an adjudication prejudicial to the Federal Land Bank.[3] Forasmuch, then, as its rights are affected, it is an indispensable party to the litigation. Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896, citing Heirs of Burney v. Ludeling, 41 La. Ann. 627, 6 So.2d 248; Succession of Todd, 165 La. 453, 115 So. 653 and Commercial National Bank in Shreveport v. Haas, 182 La. 502, 162 So. 57.

■ The failure to join the Federal Land Bank as a party was not raised either in the lower court or here. But that is of no moment, as the Court of its own motion may take cognizance of the absence of indispensable parties. Succession of Todd, supra; DeHart v. Continental Land & Fur Co., 196 La. 701, 200 So. 9; Bologna Bros. v. Stephens, 206 La. 112, 18 So.2d 914; Douglas v. Haro, 214 La. 1099, 39 So.2d 744 and Jamison v. Superior Oil

---

3. And this, despite the showing of defendants that the mortgage on the property in favor of the Federal Land Bank was completely liquidated in 1943 as this payment did not affect its right under its reservation to receive a 1/16 royalty.

Co., supra. Under the rule laid down by these authorities, it is proper to remand the case so as to permit the impleading of necessary parties, rather than dismiss the suit.

Accordingly, the judgment appealed from is annulled and set aside and the case is remanded for further proceedings conformable with law and consistent with the views herein expressed. The costs of this appeal are to be paid by plaintiff; taxation of other costs is to await final determination of the case.