130 So.2d 408

## HUMBLE OIL AND REFINING COMPANY

v.

### Donald H. JONES.

No. 45518.

May 29, 1961.

Charles Janvier, Bernard J. Caillouet, W. J. McAnelly, Jr., New Orleans, for plaintiff-appellant.

Liskow & Lewis, Lake Charles, amicus curiae.

Edwards & Edwards, Edwin W. Edwards, Crowley, for defendants-appellees.

HAMITER, Justice.

Humble Oil and Refining Company (referred to hereinafter as Humble) instituted the instant suit seeking a declaratory judg-

ment under the provisions of LRS 13:4231 et sequentia. It was consolidated, tried, argued, and considered with Humble Oil and Refining Company v. Edwards et al., 241 La. ——, 130 So.2d 413, a companion case involving identical issues and in which the same relief is sought.

The facts of the two causes are not in dispute. In 1952 and 1953 Humble obtained lease contracts (termed Jones and Edwards leases hereinafter) from the defendants which contained options authorizing it to unitize voluntarily for drilling purposes the leased acreage with other lands in the immediate vicinity "when in Lessee's judgment it is necessary or advisable to do so * * *." The Jones lease encompassed 46.726 acres and the Edwards lease 6.431 acres.

On January 11, 1955 Humble filed in the records of Acadia Parish an instrument creating a 160-acre voluntary unit known as North Crowley Gas Unit No. 3 (hereinafter called the contractual, voluntary or declared unit), it making reference to the above mentioned options and to similar options contained in six other described leases which such lessee owned. The lands covered by the Jones and Edwards leases were entirely within the boundaries of the unit so formed.

On January 23, 1955 a gas well, known as the North Crowley Gas Unit No. 3, Well No. 1, was completed within the contractual unit (on property affected by the

Jones lease). Thereafter, up to and including the month of August, 1958, royalty on the production was paid to the various owners of rights within such unit in accordance with the respective leases and in the proportion that their surface acreage bore to the entire 160 acres. Thus, the formula used during the mentioned period in calculating payments under the Jones lease was $\frac{3}{16} \times {}^{46.726}\!/_{160}$, and that employed in connection with the Edwards lease was $\frac{1}{8} \times {}^{6.431}\!/_{160}$.

On August 15, 1958 the Department of Conservation through its Commissioner, after hearings on an application of Humble, issued its order No. 423–G, effective September 1, 1958, which created a forced production unit of 177.60 acres (hereinafter called the conservation unit). The order contained the usual stipulation that the various tracts therein should share in the unit production in the proportion that the surface area of each bore to the entire surface area of the forced unit. It further designated the aforementioned gas well as the unit well.

The conservation and contractual units were not co-extensive. Rather, the former overlapped the latter as to only 101.13 acres (included in this overlapped area was all of the acreage covered by the Jones and Edwards leases), thereby leaving 58.87 acres of the contractual unit outside the conservation unit. On the other hand 76.47 acres within the conservation unit lay with-

out the contractual unit; and Humble, as the designated operator of the well, was required by the Commissioner's order to pay to the owners of rights in that acreage the contracted royalty on the basis of $\frac{76.47}{177.60}$, regardless of whatever obligations such lessee might have respecting the contractual unit.

Subsequent to the issuance of such order, and with the view of recognizing and giving effect to both units, Humble proposed that all of the owners in the contractual unit sign a division order under which each such owner would share in the production allocated by the Commissioner's order to the mentioned overlapped 101.13 acres in the proportion that the surface acreage of each owner bore to the total acreage of the contractual unit (160 acres). In a letter attached to the submitted division order the following, among other things, was said: " * * * it has been necessary to conclude that the formation of units by the Commissioner did not annul the voluntary units, and that each royalty owner under a voluntary unit is entitled to his proportionate share of the royalty on production from a Commissioner's unit, insofar as the Commissioner's unit overlaps the voluntary unit. Therefore, in cases where a Commissioner's unit overlaps a voluntary unit, we have credited the production allocated to the overlapping acreage to the entire voluntary unit in which it is situated. For example, if 40 acres of a Commissioner's unit overlaps a voluntary unit, we have not credited the production which accrues to the 40 acres solely to the owners of the 40-acre tract, but have credited it to the entire voluntary unit and have divided it among the owners under the voluntary unit in the proportions in which production from the well on the voluntary unit was credited before the Commissioner's unit was established." This proposed method of distribution obviously would have had the effect of reducing royalty payments previously made under each of the leases in the contractual unit. For example, thereby royalty to be paid under the Jones lease would be calculated as $\frac{3}{16} \times \frac{101.13}{177.60} \times \frac{46.726}{160}$ and that under the Edwards lease as $\frac{1}{8} \times \frac{101.13}{177.60} \times \frac{6.431}{160}$.

The owners under the Jones and Edwards leases refused to agree to such a division, they maintaining that they were entitled to receive royalty based on their surface acreage in the conservation unit in relation to that unit only. And as a result of the refusal the instant declaratory judgment suits were instituted in which Humble cited such owners and prayed that the court approve, and declare as being proper, its above described proposed method for calculating the royalty to be paid. None of the other persons who participated in the contractual unit were made parties to the actions.

Answering, the defendants alleged that the contractual unit was supplanted, superseded and made void by the conservation

unit and that they are entitled to be paid royalty in the proportion that the surface acreage described in their respective leases bears to the total surface acreage within the conservation unit (177.60), all without regard to the contractual unit. And they prayed for declaratory judgments so decreeing.

The district judge held that the position of the defendants was correct and, accordingly, he declared and adjudged that Donald H. Jones was entitled under his lease to be paid $\frac{3}{16}$ x $^{46.72}\%_{177.60}$ and that the owners under the Edwards lease should together receive $\frac{1}{8}$ x $^{6.481}\%_{177.60}$. He further decreed that the entire contractual unit was supplanted, superseded and rendered void by the subsequent formation of the conservation unit.

On appeals to the Court of Appeal the judgments were affirmed. See 125 So.2d 640, 649, 654. The two cases are presently before us on writs of certiorari or review granted on the applications of Humble.

One of the primary reasons for our granting the mentioned writs arose out of a suggestion, contained in a dissent to the Court of Appeal's majority opinion in the Jones case, that there was an apparent lack of indispensable parties to this litigation. Thus, the dissenting judge observed: " * * * I think it is well at this point to note the rights of the parties to this con-

tractual unit, and especially of the owners of the mineral and royalty interests of the 58.87 acres of the contractual unit which were *not* included in the subsequent Commissioner's unit and which under the decision of this court will lose all right to share in any further production from the unit well, from which for almost four years they have drawn royalties based upon their acreage participation in the unit well." And in a footnote to that observation the judge pointed out: "These parties are not represented in this declaratory action brought by the lessee only against the lessor and royalty owner of a 46.73-acre tract included within *both* the contractual unit and the subsequently formed Commissioner's unit. Of course, it is to the interest of *this* landowner to disregard the former contractual unit which he and the other landowners had formed in consideration of the mutual advantage accruing to each, and actually no one represents the point of view of the mineral and royalty owners whose interests will become valueless if the majority stands, since Humble will pay no more total royalties should either result ultimately obtain. This absence of necessary or indispensable parties gave the writer some concern, since there is authority that in such absence the suit should at least be remanded for proper impleader. Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65: Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896. * * *"

Anent the quoted comment, and in keeping with the holdings of the two cases cited in the footnote, the Louisiana Declaratory Judgments Act (pursuant to which these proceedings were instituted) specifically provides: "When declaratory relief is sought, *all persons shall be made parties who have or claim any interest which would be affected by the declaration,* and no declaration shall prejudice the rights of persons not parties to the proceeding. * * *" See LRS 13:4241; Louisiana Code of Civil Procedure, Article 1880. (Italics ours.)

█ We do not understand, as the argument of Humble suggests, that the statutory provision that "no declaration shall prejudice the rights of persons not parties to the proceeding" nullifies the explicit language that "all persons shall be made parties who have or claim any interest which would be affected by the declaration." Obviously the only purpose of that provision is to protect an interested person who is not made a party because his existence is not known or his affected interest is not apparent when the declaratory judgment suit is instituted and litigated. As to him the judgment would not be res judicata even though his rights were specifically involved and passed upon in the suit. However, by reason of the preceding language, it is essential that an affected, interested person be cited in the action when his existence and claim are evident.

In its brief to this court Humble declares that the principal question presented for determination by the present litigation is: "Does an Order of the Commissioner of Conservation creating a forced unit, which overlaps a previously declared unit formed by the lessee under the authority of contractual agreements between it and its lessors, supersede and abrogate these contractual agreements insofar as the calculation of the royalties due the lessors are concerned?" Then it argues that such question must be answered in the negative.

On the other hand the brief of defendants states: " * * * The Commissioner's unit included and covered all of the property covered by the Edwards Lease and also all of the property covered by the Jones Lease. In other words, all properties covered by the two leases were included in the unit formed by Humble and were also included in the unit formed by the Commissioner; *however, there were other properties affected and covered by the first unit which were left out of the larger Commission Unit* and also there were properties which had been left out of the first unit formed by Humble on a voluntary basis in the formation of its unit, but which were included in the larger subsequent unit formed by the Commissioner.

"It is the position of the defendants in this matter that *when the Commissioner formed the final commission unit all acreage left outside of the unit lines by the commissioner should be disregarded in the calculation of royalty payments* and that only those acres within the unit lines formed by the Commissioner should be paid royalty accruing from the unit well." (Italics ours.)

Considering the foregoing discussion and quotations the inescapable conclusion is that if either of the two announced positions is finally adopted in these causes the interests of many persons other than those heretofore made defendants will be affected and, accordingly, those persons are indispensable parties to the litigation. Thus, if the judgments of the district court and the Court of Appeal be upheld, each having decreed that the conservation unit superseded and rendered ineffective the contractual unit, those owners of interests in the latter unit which were omitted from the former unit will receive no further royalty payments; for surely, if the contractual unit is void as to the present defendants it is likewise a nullity as to the other owners who agreed to and joined in its creation. Again, if Humble's position be maintained all participants in the original contractual unit will be required to accept royalty payments much smaller than those initially received. Moreover, as a third alternative not suggested by any of the litigants here, it might well be argued (and possibly with some force) that the conservation unit had no effect whatever on the contractual unit; and that Humble, in addition to its obligation to pay under the Commissioner's order, is liable for the full royalty provided for in the respective leases and contemplated by the original voluntary unitization plan.

Both Humble and the defendants recognize that the rights of the non-cited persons above referred to will be affected by the final judgments to be rendered. But it is contended that the produced effect will be only indirect, just as that which might occur from other decisions in the general jurisprudence of this state; and, further, that the pooling arrangement was merely a matter of distribution of royalty as between a particular or individual lessor and his lessee which can be litigated without the necessity of making other lessors parties. In this connection Humble, in its supplemental brief, states: " * * * All such cases that we have been able to find in our research pertinent to the question at hand are cases in which the Court has found that the parties declared 'indispensable' have been *those parties vested with an interest in titles, contracts, mineral leases,* and the like which were under direct consideration by the Court.

"The lessee, Humble, elected to file these suits only against its lessors Jones and Edwards with whom it had serious disagreement as to the amount of royalties due under their lease. * * *"

Under "direct consideration" here is the fate of the contractual unit; and a final declaration that it was nullified by the Commissioner's order (as prayed for by these defendants) would "directly affect" the rights of many persons who aided in its formation, for (as before shown) payments of royalty to them would entirely cease. This being true such affected persons must be treated as being indispensable parties. As stated in Article 641 of the Louisiana Code of Civil Procedure, "Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.

"No adjudication of an action can be made unless all indispensable parties are joined therein."

Furthermore, it is incorrect to say that the voluntary pooling arrangement was merely a matter of distribution of royalty between a particular or individual lessor and Humble. Of course, such lessee had the authority to, and the duty of, providing the technical means for actually creating the contractual unit if in its judgment such a step was necessary or advisable. Nevertheless, there existed reciprocal and inter-related rights and obligations among the various lessors which were important and necessary in effecting the creation. Supporting this statement is certain language of an instrument in which Jones and other lessors specifically authorized the inclusion of their acreage in the contractual unit, it reciting that those persons were acting "in consideration of the mutual advantages accruing to each" and that the written authorization "may be executed in counterpart and will be binding on those parties who execute same * * *."

In its supplemental brief, filed in support of the contention that the aforementioned persons need not be made parties to these suits since the judgments will not be binding on them, Humble cites Parker v. Tillman et al., 228 La. 214, 81 So.2d 866, 869. But that case is not authority for the contention made. Therein the court observed that "we cannot say whether or not the attorneys * * * were necessary parties." And it pointed out that, if eventually it appeared that they were, their rights would not be prejudiced by the judgment. Quite the contrary is the situation here; the record now before us amply sustains a finding of direct interests on the part of many non-cited persons in the matter being litigated.

Also cited by Humble are other cases decided by this court in which, so it argues, we failed to require that certain interested persons be made parties. However, it ap-

pears that therein either the interests of the non-cited persons were not directly affected or we inadvertently failed to notice the lack of indispensable parties.

█ Rather than dismiss these suits, in accordance with the practice followed by this court at one time, we shall remand them to permit the impleading of any indispensable party or parties, the right being reserved to all litigants to file appropriate pleadings and to introduce evidence material and relevant thereto.

For the reasons assigned the judgments of the district court and the Court of Appeal are annulled and set aside, and this case is remanded to the district court for further proceedings consistent with the views herein expressed and in accordance with law. Costs incurred in this court shall be paid by plaintiff, and all others are to await the final determination of the cause.

HAMLIN, Justice (dissenting).

I am compelled to dissent from the majority opinion herein, for the reason that I am convinced that the able majority opinion rendered by the Court of Appeal, Third Circuit, with Judge Preston L. Savoy as its author, 125 So.2d 640, 654, is eminently sound in law and correctly sets at rest the conflict prevailing, so much so that I shall adopt it as my dissent.