Judge Max N. Tobias, Jr.
The ultimate issue in this lawsuit relates to the bidding process under Louisiana’s Public Lease Law, La. R.S. 41:1211, et seq. The plaintiff, Two Canal Street Investors, Inc. (“TCSI”), appeals the trial court’s judgment, dismissing as of non-suit its lawsuit for its failure to post security for costs pursuant to La. R.S. 13:1215. Finding that the trial court abused its discretion in ordering TCSI to post excessive security for costs and dismissing TCSI’s suit without holding a contradictory hearing, we vacate the ex parte order setting security for costs in the amount of $750,000.00; vacate the judgment of the trial court (a) dismissing TCSI’s suit as of non-suit, and (b) ordering the cancellation of the inscription of the Notice of Pendency of Action in the Orleans Parish mortgage records; and remand for a decision on the peremptory exception of no right of action and for further proceedings.
The New Orleans Building Corporation (“NOBC”), one of the three defendants, is a public benefit corporation that was formed by the City of New Orleans (“City”), through its chief executive officer. NOBC’s purpose is to own; lease, develop, and operate, inter alia, that certain Mississippi riverfront parcel of land and the structure thereon (a 33-story building) located at 2 Canal Street, New Orleans, commonly referred to as the World Trade Center of New Orleans. The City, a political subdivision of Louisiana, has consistently maintained a beneficial interest in NOBC.[1] The City and Mary Kay Kleinpeter-Zamora, the City’s chief procurement officer of its purchasing bureau, are additional parties-defendant.
In September 2014, NOBC issued a request for proposals (specifically, Request *1007 for Proposal No. 8975-01775) as to what to do with the vacant 2 Canal Street property. Proposals were received. A committee[2] established by NOBC reviewed the proposals, and after significant study, selected the proposal of the intervenors, Carpenter & Company, Inc., Woodward Interests, L.L.C., and Two Canal Owner LLC (collectively hereafter,. “Carpenter-Woodward”), rejecting the proposal of TCSI and that of other proposers. A contract was entered into between NOBC and Carpenter-Woodward for the redevelopment of 2 Canal Street into a multi-million dollar facility: a Four Seasons Hotel and condominiums. TCSI had proposed a multi-mil-lion dollar facility (but of a lesser amount than that of Carpenter-Woodward): redevelopment of 2 Canal Street into a Hotel Alessandra and apartments.
TCSI, dissatisfied with the decision of NOBC, filed suit on 23 April 2015 to block the granting of the contract to Carpenter-Woodward for the redevelopment of 2 Canal Street, maintaining that their proposal was more beneficial (financially and otherwise) to NOBC and the City than that of Carpenter-Woodward;[3] it also asserted claims for declaratory relief, La. C.C.P. arts. 1871, et seq., asserting that the Public Lease Law applied and had not been followed. On 1 June 2015, TCSI also filed a Notice of Pendency of Action in the Orleans Parish mortgage records. TCSI did not sue Carpenter-Woodward; however, Carpenter-Woodward intervened in the lawsuit to protect its accepted proposal.[4]
Discovery thereafter commenced on TCSI’s suit.
While the suit was pending, the shares of stock of TCSI were transferred for ten dollars to Stuart C. “Neil” Fisher (“Mr. Fisher”), although TCSI asserts that other valuable consideration was given. Mr. Fisher became the sole shareholder, president, and sole director of TCSI. He has continued the prosecution of TCSI’s suit.[5]
*1008 La. R.S. 13:1215, which applies only to suits in the Civil District Court for the Parish of Orleans by virtue of its placement in the Louisiana Revised Statutes in Subpart C of Part II of Chapter 5 of Title 13 (relative to the Clerk-of the Civil District Court), states:
The defendant in any cause may require the plaintiff or party prosecuting the cause to give bond or other security, in such amount as may be fixed by the court, to secure the repayment on the final termination of the cause of all costs expended by the defendant therein. The order requiring such bond or security for costs shall issue ex-parte on the application of the party, without costs, and no further proceeding shall be had in the cause until such bond or security has been furnished. The court shall fix the delay within which such bond or security for costs shall be furnished, and the failure to furnish it, within such delay, shall operate a dismissal of the cause as in case of non-suit. In all cases the surety for costs shall be considered a party to the cause and shall-be condemned for the amount of costs recoverable in solido with the party cast in the final judgment in the cause. [Emphasis supplied.]
 Although the failure to furnish security under the law would appear to be self-operating, absent an order or judgment formally dismissing the suit gives an appellate court nothing to review. An appellate court reviews written judgments, orders, and minute entries.
On 21 June 2016, pursuant to La. R.S. 13:1215,[6] Carpenter-Woodward filed on behalf of themselves and the defendants an ex parte motion to set security for costs to require TCSI to furnish security in the amount of $800,000.00 for the repayment of all costs that would be expended by the *1009 City, NOBC, Ms. Kleinpeter-Zamora, and Carpenter-Woodward. A request for an ex parte order is a recognized procedure for a defendant to use La. R.S. 13:1215. TCSI was served with the motion; By order dated 24 June 2016, the trial court set ex parte the security for costs in the amount of $750,000.00 to be posted within ten days from the date of service of the order, in default of which TCSI’s suit would be dismissed as of non-suit. See La. C.C.P, art. 963.[7] Service of the order was perfected by the sheriff on counsel for TCSI on 1 July 2016. TCSI did not post the security as ordered; neither did it file a motion to reduce the security nor seek review of the trial court’s interlocutory order by an application for supervisory review by this court. TCSI did, however, file a memorandum in opposition to the motion to dismiss for failure to post security on 13 July 2016.
The trial court formally dismissed TCSI’s suit as of non-suit and ordered the cancellation of the Notice of Pendency of Action in the Orleans Parish mortgage records (see La. C.C.P. art. 3753), commemorating its decision by a written judgment of 13 July 2016. (The record on appeal does not reflect that a hearing was had on the defendants’ and Carpenter-Woodward’s motion or on the trial court’s order to post security.) Presumably, the trial court reviewed TCSI’s memorandum in opposition before issuing its judgment.
This timely devolutive appeal fob lowed.[8]
An appeal was TCSI’s proper remedy to seek review of the judgment dismissing its suit in its entirety.[9] La. C.C.P. arts. 1915 *1010 and 1918.
On appeal, TCSI assigned the following errors: (1) the trial court misapplied La. R.S. 13:1215 to an intervenor because the law and jurisprudence permits only a defendant to seek security for the clerk of court costs; (2) the trial court erred by (a) misapplying La. R.S. 13:1215 to order TCSI to secure both the defendants’ and intervenors’ expert consulting fees and (b) not holding a contradictory hearing pursuant to La. C.C.P. art. 1920,[10] La. R.S. 13:4533, and La. R.S. 13:3666; and (3) the trial court violated TCSI’s constitutional right of access to the courts by imposing a $750,000.00 security requirement mere months before the scheduled merits trial. Finding that the first two assignments of error are interrelated, we discuss them as one.
Attached to the defendants’ and interve-nors’ joint ex parte motion to set security for costs is a memorandum in support of the motion. Attached thereto are the affidavits of Edward D. Wegmann, one of Carpenter-Woodward’s attorneys; J. Dalton Courson, one of NOBC’s[11] attorneys; and Adam J. Swensek, Chief Deputy City Attorney for the City,[12] respectively dated 21 June 2016, 10 June 2016, and 20 June 2016. Mr. Wegmann asserts that through 1 June 2016 his client, Carpenter-Woodward, had incurred $666,903.00 in expert witness fees and expenses,[13] in excess of $2,500.00 in court costs, and in excess of $31,000.00 for deposition transcription fees.[14] Mr. Courson asserts that through 1 June 2016 his client had incurred “recoverable costs” of $79,659.15 ($69,521.75 for expert witnesses,[15] $2,045.00 for court costs and sheriff fees, and $8,092.40 for deposition transcription fees[16]). Mr. Swensek asserts that through 1 June 2016 the City had expended $7,200.45 for deposition transcript fees.[17] Together, the three affiants assert that their clients had incurred $753,762.60 in expenses.
TCSI’s principal argument is that Carpenter-Woodward cannot recover costs as intervenors and cannot utilize La. R.S. 13:1215 because it only applies to a defendant. We do not, however, need to address *1011 this issue because we find that Carpenter-Woodward should have been added as a party-defendant when TCSI originally filed its suit against the other defendants.[18]
Carpenter-Woodward intervened in these proceedings. However, it maintains that it is an indispensable party to this litigation and should have been joined as a party-defendant by TCSI. In light of the declaratory judgment filed by TCSI, we agree.
La. C.C.P. art. 641 provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
La. C.C.P. art. 645 states:
The failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion.
La. C.C.P. art. 927 B provides, in pertinent part, that the nonjoinder of a party may be noticed by either the trial or appellate court on its own motion. Before La. C.C.P. art 641 was amended, we would address the issue of joinder of parties distinguishing between necessary and indispensable parties. Indispensable 'parties to an action were those whose interests in the subject matter were so interrelated, and would be so directly affected by judgment, that a complete and equitable adjudication of the controversy could not be made unless they were joined in the action. No adjudication of an action could be made unless all indispensable parties were joined therein. Parties would be deemed indispensable only when that result was absolutely necessary to protect substantial rights. Fewell v. City of Monroe, 43,281, p. 3 (La.App. 2 Cir. 6/11/08), 987 So.2d 323, 325.
 The provisions on joinder of parties were amended to their present form by La. Acts 1995, No. 662, effective 15 August 1995. The amendment removed the terms “necessary and indispensable parties” and inserted the concept of “joinder of parties needed for just adjudication.” Fewell, 43,281 at p. 4, 987 So.2d at 325, citing Family Federal Sav. & Loan Ass’n of Shreveport v. Huckaby, 30,481, p. 11 (La.App. 2 Cir. 5/13/98), 714 So.2d 80, 86. Parties needed for just adjudication in an action are those who have an interest re *1012 lating to the subject matter of the action and are so situated that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action. La. C.C.P. art. 641. A person should be deemed to be needed for just adjudication only when absolutely necessary to protect substantial rights. Fewell, 43,281 at p. 3, 987 So.2d at 325, citing State, Dept, of Highways v. Lamar Adv. Co. of La., Inc., 279 So.2d 671 (La.1973).
Courts are to determine whether a party should be joined and whether the action should proceed if a party cannot be joined by a factual analysis of all the interests involved. Gibbs v. Magnolia Living Ctr., Inc., 38,184, p. 8 (La.App. 2 Cir. 4/7/04), 870 So.2d 1111, 1116; Branch v. Young, 13-686, p. 8 (La.App. 5 Cir. 2/26/14), 136 So.3d 343, 350. Under the revision, “[a]n analysis of the interests of the joined and nonjoined parties with respect to the action is required to determine whether the action may proceed.” Lowe’s Home Const., LLC v. Lips, 10-762, p.6 (La.App. 5 Cir. 1/25/11), 61 So,3d 12, 16, citing Fewell, supra.[19]
Although the classification of a party as indispensable no longer appears in La. C.C.P. art. 641, by using the word “shall,” the article still makes mandatory the joinder of the person described in La. C.C.P. art. 641 as a party to the suit. Thus, an adjudication made without making a person described in the article a party to the suit is an absolute nullity. See Terre-bonne Parish Sch. Bd. v. Bass Enterprises Prod. Co., 02-2119, p. 5 (La.App. 1 Cir. 8/8/03), 852 So.2d 541, 544; Avoyelles Parish Sch. Bd. v. Bordelon, 11-126, p. 3-4 (La.App. 3 Cir. 10/5/11), 77 So.3d 985, 988.
In this case, TCSI not only challenges the bidding process itself under the Public Lease Law, but TCSI also seeks a declaration that nullifies the lease between NOBC and Carpenter-Woodward.
La. C.C.P. art. 1880 states:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard. If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard. [Emphasis supplied.]
In Hernandez v. State ex rel. Dept. of Transp. and Development, 02-0162, 02-0163 (La.App. 4 Cir. 10/16/02), 841 So.2d 808 ( a case where a rehearing en banc was granted, and on rehearing a majority of the court voted to affirm the panel decision and to deny the rehearing for the reasons stated in the original opinion), the plaintiff filed a wrongful death action against the Department of Transportation *1013 and Development (“DOTD”) for the > death of her mother. Ms. Hernandez (who was then Vickie Lynn Chalaire) was reared by her great aunt, Marie Sorci, from the time she was two years old until she became an adult, and had little contact with Ms. Hendley, her natural mother, for much of her formative years. On Ms. Hernandez’s eighteenth birthday, Ms. Sorci and Ms. Hernandez executed a Notarial Act, whereby Ms. Sorci adopted Ms. Hernandez “to have all the rights of an adopted child and forced heir as provided by the laws of the State of Louisiana.” Hernandez, 02-0162, 02-1063 at p. 4, 841 So.2d at 813.
After the wrongful death action commenced, subsequent to Ms. Hernandez’s deposition testimony concerning her adoption, DOTD filed a peremptory exception of no right of action to the wrongful death suit filed by Ms. Hernandez, citing Ms. Hernandez’s deposition testimony that she had been adopted by her great aunt. In support of its peremptory exception, the DOTD cited the consistent line of Louisiana cases holding that children given in adoption are not included in the classes of persons entitled to bring a wrongful death action enumerated under Louisiana law.
Faced with the DOTD’s peremptory exception of no right of action, Ms. Hernandez filed a separate suit for declaratory relief, to-wit, a Petition to Revoke, Rescind, and Declare Statutory Adoption Invalid, asserting that she was not advised at the time of her adoption that the adoption would affect her relationship with her natural mother. DOTD was not made a party to the new suit. The trial court signed,, ex parte, a Declaratory Judgment that. Ms. Hernandez’s adoption was “invalid, null, void, and without effect as though it had never been executed.” Hernandez, 02-0162, 02-0163 at p. 5, 841 So.2d at 813.
In June 2001, just prior to the second trial, Ms. Hernandez filed both an exception- and; an- opposition to the DOTD’s peremptory exception of no right of action, attaching a copy of the Declaratory Judgment' nullifying her adoption and characterizing the DOTD’s exception as an improper collateral attack on a valid judgment. The next day, the trial court denied the DOTD’s peremptory exception of no right of action. After the second trial, the DOTD filed an application for a writ of supervisory review of the judgment denying its exception in this court. This court denied the application for supervisory writs of review, stating as follow: “Wé decline to exercise our supervisory jurisdiction in this matter. Relator has an adequate remedy on appeal.”
We stated:
More important as it concerns. the question of the validity of the Declaratory Judgment nullifying Ms. Hernandez’s adoption, the proper parties to a declaratory judgment action are governed by La. C.C.P. art. 1880, which states, in pertinent part, as follows:
When declaratory relief is sought, all persons should be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
[Emphasis added.] Under the provisions of the above article, “all persons ... who have ... any interest which would be affected by the declaration” are indispensable parties to the declaratory judgment action. [Emphasis added.] Nicholas v, Richardson, 673 So.2d 1317, 1318 (La.App. 3d Cir.1991); Blanchard v. Na-quin, 428 So.2d 926, 928 (La.App. 1st Cir.), writ denied, 433 So.2d 162 (La. 1983). This conclusion is supported by La. C.C.P. art. 641, which defines an indispensable, party to a judicial proceeding as a person “whose interests in *1014 the subject matter are so interrelated that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.” Thus, when both the existence and the .claim of a person who would be affected by a declaratory judgment are evident, that person must be joined in the petition for declaratory judgment. Nicholas, 573 So.2d at 1318, citing Humble Oil & Refining Co, v. Jones, 241 La. 661, 130 So.2d 408 (1961).
A necessary corollary to the rule is that a party’s failure to join an indispensable party to a declaratory judgment action deprives the trial court of subject-matter jurisdiction over that action. In fact, this rule has been expressly recognized by a number of foreign jurisdictions applying the Uniform Declaratory Judgment Act. Penhsylvania courts have consistently held that a failure to join an indispensable party to a declaratory judgment action deprives a court of subject-matter jurisdiction. See Tremco, Inc. v. Pennsylvania Manufacturers’ Insurance Co., 2002 WL 1404767, p. 2 , (Pa.Comm.P1.2002) and cases cited therein. Moreover, Oregon courts have held that the requirement that indispensable parties , be named to actions filed under the Declaratory Judgment Act is jurisdictional, meaning that “failure to join an interested party renders any judgment void.” See Fox v. Country Mutual Insurance Co., 169 Or.App. 54, 65, 7 P.3d 677, 684 (2000) and cases cited therein. The Nebraska Supreme Court has also recognized that'the presence of necessary parties is jurisdictional in declaratory judgment cases, and that it is a matter that the parties cannot waive. 'Redick v. Peony Park, 151 Neb. 442, 451, 37 N.W.2d 801, 807 (1949). Because Ms. Hernandez failed to name the DOTD, an indispensable party, as a party to the proceeding that resulted in the Declaratory Judgment at issue in the instant case, the trial court lacked subject-matter jurisdiction. Moreover, pursuant to La. C.C.P. art.2002, a judgment issued by a court that lacks subject-matter jurisdiction is absolutely null.
Although no Louisiana court has previously applied the above reasoning to hold that a declaratory judgment entered in the absence of an indispensable party is absolutely null, our decision on this issue is nevertheless consistent with the Louisiana Supreme Court’s most recent statement on the subject. In Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65 (1952), the court annulled and set aside a judgment entered in the absence of a necessary party and remanded the case to allow the necessary party to be named. Id. at 630, 60 So.2d at 68. That procedure was followed most recently in Nicholas, 573 So.2d 1317 (La.App. 3 Cir. 1991). However, an important distinction between the instant case and the Horn and Nicholas cases makes remand impossible in the instant case. Those cases involved direct appeals of judgments entered in the absence of required parties. If the Declaratory Judgment itself had been appealed to this court, remand would have been the appropriate remedy. However, the DOTD was unable to appeal the Declaratory Judgment because it was not notified of the existence of the Declaratory Judgment within the appropriate appeal delays. In fact, this court does not have jurisdiction to remand the Declaratory Judgment at issue here for joinder of DOTD because that judgment is not before us on appeal; only the propriety of the denial of DOTD’s peremptory exception of no right of action is before us. Thus, we cite the Horn and Nicholas cases here purely in support of the proposition that a judgment entered in the absence of an indispensable party is an absolute nullity under Louisiana law.
*1015 This case involves the improper use of an absolutely null Declaratory Judgment that was issued in the absence of an indispensable party because the party that sought the Declaratory Judgment intentionally failed to join that indispensable party. Because an absolutely null judgment cannot be used to defeat a peremptory exception of no right of action, the trial court improperly denied the DOTD’s exception on the basis of the absolutely null Declaratory. Judgment. Alternatively, even if the Declaratory Judgment nullifying Ms. Hernandez’s adoption was properly issued by the trial court and is not itself an absolutely null judgment, the trial court improperly denied the DOTD’s peremptory exception of no right of action on the basis of that judgment because La. C.C.P. art.' 1880 clearly provides that “no declaration shall prejudice the rights of persons not parties to the proceeding.” Thus, the Declaratory Judgment nullifying Ms. Hernandez’s adoption cannot prejudice the DOTD’s right to have Ms. Hernandez’s case dismissed on an exception of no right of action, because the DOTD’s exception was valid at the time it was filed.
Hernandez, 02-0162, 02-168 at pp. 12-15, 841 So.2d at 817-19.
In the case at bar, because Carpenter-Woodward’s rights and interests are directly affected by this litigation, they appropriately joined the present litigation. Their status as intervenors is cured by La. C.C.P. art. 641; for all intent and purposes they are bona fide defendants herein. Therefore, we find that, as defendants/in-tervenors, Carpenter-Woodward may seek a bond for those costs permitted pursuant to La. R.S. 13:1215.
Turning now to the showing that must be made in order to secure a La. R.S. 18:1215 bond, in Carter v. Phillips, 337 So.2d 187 (La.1976), a unanimous Supreme Court, applying the somewhat analogous La. R.S. 13:4522,[20] stated:
We agree that it is within the discretion of the trial judge to determine whether the showing required may be made by the allegations in the motion, supporting affidavits, the arguments of counsel at the hearing, introduction of evidence, or in any other manner which the trial judge deems appropriate. However, we feel that the trial judge abused his discretion here in accepting as a showing the allegations in the motion and perhaps argument of counsel. There is no indication in the record that the trial judge exercised his discretion ‘with the regard for the Actual [sic] necessity for a bond and for the interest or motive of the party demanding it.’ (Emphasis added). Whitson v. American Ice Co., [164 La. 283, 288,] 113 So. 849, 851 [ (1927) ]. We are not convinced by the bare pleadings that the defendant needed the testimony of .five expert witnesses *1016 in order to properly defend his suit. Nor is it clear why the defendant must take the depositions of the three doctors from Alexandria rather than subpoenaing them as witnesses at the trial. We do not mean to suggest that the arguments of counsel may Never [sic] suffice as a showing. However, in this case, the arguments made at the hearing were not transcribed and made part of the record, and we cannot presume on review that they were adequate.
The order of the district court requiring the plaintiff in this case to furnish security for $900 of court costs is annulled, reserving to the defendant the right, on a proper showing, to demand, now or whenever the necessity may arise, security for any court costs which the defendant may actually have to incur or be responsible for in advance of a final judgment condemning either party to pay such costs.
Carter, 387 So.2d at 189.
Like Carter, the record on appeal fails to demonstrate why any or all of the expert witnesses are necessary to defend against TCSI’s suit against the defendants and the intervenors or why the depositions were necessary and proper. Further, as to expert witnesses and depositions, Sections 3666 and 4533 of Title 13 speak to the determination of costs at a future date— the date when the Article 1920 rule to tax costs is heard after trial on the merits. Except for objectively determinable costs such as those of the clerk of court and sheriff, all other potential costs that might be taxed are speculative pending trial. Thus, the taxability of costs of experts and depositions is unknown until post-trial when one knows what experts testified and which depositions, if any, were utilized during trial. Watters v. Department of Social Services, 08-0977, pp. 50-51 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1162; BcL.cf Supervisors of Louisiana State University and Agr. and Mechanical College v. 1732 Canal Street, L.L.C., 13-0976, p. 11-12 (La. App. 4 Cir. 1/15/14), 133 So.3d 109, 118-120.
The law is well-settled that a trial court has discretion to assess the costs of depositions and of expert witnesses to a party. Watters, supra; Board of Supervisors of Louisiana State University and Agr. and Mechanical College, supra; La. C.C.P. art. 1920; La. R.S. 13:1215; La. R.S. 13:4533; see also La. R.S. 13:4522; La. R.S. 13:3666. But deposition costs may only be assessed if the deposition is used at the trial of the merits. Because it is unclear and uncertain that the depositions will be utilized at trial, they are not appropriately at this time considered on a motion to fix security for costs under La. R.S. 13:1215. Similarly, what an expert should be paid for his testimony is not governed or controlled by the contractual amount that has been agreed to between the expert and a party who has employed the expert. That a party may contract with an expert witness to pay a fee at a particular contracted for dollar amount per hour or per job does not bind a trial court to award the contracted for amount. Only the reasonable fees of an expert witness who testifies at trial may be taxed as costs. Thus, speculative costs (depositions, fees of experts, etc.) that might be taxed by the court may only be determined post-trial and are not subject to being the subject of security of costs pursuant to La. R.S. 13:1215.
However, court costs—those fees of the clerk of court and sheriff—are objective in nature, being promulgated by regulations. Therefore, it is appropriate for a trial court, upon motion, pursuant to La. R.S. 13:1215, to. set security or bond for the estimated objective costs (such as clerk’s and sheriffs fees) that a defendant *1017 and/or intervenor has or will incur during the course of the litigation,[21]
The foregoing considered, we find the trial court abused its discretion in fixing security pursuant to La. R.S. 13:1215 by considering the “costs” that the defendants have alleged they had incurred through the date of their motion for experts, consultants, and depositions. The trial court did not, however, abuse its discretion in ordering TCSI to furnish security for court costs of the clerk of court or sheriff incurred by Carpenter-Woodward.
We find that, as to the $2,045.00 for court costs and sheriff fees that NOBC has incurred but apparently not yet paid in advance or as they accrue, NOBC appears exempt from the payment of costs pursuant to La. R.S. 13:5112, the trial court may not consider such amounts as subject to a security bond. And as to the City and Ms. Kleinpeter-Zamora, like NOBC, its court costs and sheriff fees that they have or will incur are not an appropriate subject for a La. R.S. 13:1215 security for costs bond. See La. R.S. 13:4521.[22]
Finally, when dealing with the extraordinarily significant expenses in the hundreds of thousands of dollars alleged to have been incurred, if such might be required to' be posted by a plaintiff, we find that a formal contradictory hearing and inquiry was required of the trial court before dismissing the plaintiffs suit for failure to post security.
We find that embracing the defendants’ and intervenors’ interpretation of La R.S. 13:1215 would be totally disruptive and destructive of our well-developed system of justice. If a party-plaintiff was required by virtue of La. R.S. 13:1215 to essentially pre-fund through posting security for costs a defendant’s expense for experts, consultants, and depositions—each of which being purely speculative if necessary at trial—extraordinary sums of money could be reached, even more than the amounts claimed in this'case; This would deprive a plaintiff of the opportunity to seek justice in a court of law, putting aside the destruction of the legal profession as we know it. That decision is legislative, not one for judicial interpretation and fiat, that must *1018 be set forth in clear and unequivocal terms.
As to TCSI’s claim of unconstitutionality, we note, as do the appellees, that the issue was not raised in the trial court, which ordinarily is where such claims must begin for an appellate court review. TCSI asserts that the act of setting of $750,000.00 bond has denied them access to the courts, an alleged violation of La. Const. Art. I, § 22. Although setting such a large bond does cause one to pause, in light of our other reasons for setting aside the trial court’s action, we find that our conclusion for the present moots the constitutional issue. Accordingly, we pretermit addressing it further.
For these reasons, inter alia, the ex parte order setting security for costs is vacated, the judgment of the trial court dismissing TCSI’s suit as of non-suit and ordering the cancellation of the inscription of the Notice of Pendency of Action in the Orleans Parish mortgage records is vacated, and this matter is remanded to the trial court to set the appropriate security for costs that the plaintiff may be required to post in accordance with the reasons set forth in this opinion. We further remand the peremptory exception of no right of action filed in this court for a hearing at which the exceptor and TCSI may introduce evidence.
ORDER FOR SECURITY VACATED; JUDGMENT VACATED; EXCEPTION OF NO RIGHT OF ACTION REMANDED TO TRIAL COURT; REMANDED
LOMBARD, J., CONCURS IN THE RESULTS

. See 2016 La. Acts, No. 516, amending La. R.S. 41:1212 and 41:1215, effective 13 June 2016, and applicable to "all leases entered into by public benefit corporations after the effective date of this Act, and all claims, suits or appeals pending on the effective date of this Act and all claims, suits or appeals filed on or after the effective date of this Act.”

. The committee was composed of Andy Kopplin, the City’s chief administrative officer; Cindy Connick, executive director of the Canal Street Development Corporation; Bill Gilchrist, Mayor Mitchell Landrieu’s director of place-based planning; Bob Rivers, executive director of the City Planning Commission; and Ashleigh Gardere, director of Mayor Landrieu's workforce initiative. The consultant hired to review the proposals was the Stone Pigman Walther Whitmann LLC law firm who, in turn, retained JLL Hotels and Hospitality Group ("JLL”), an international financial and professional services firm. See Two Canal Street Investors, Inc. v. New Orleans Building Corp., 15-0924 (La.App. 4 Cir. 4/20/16), 193 So.3d 278.

. See Two Canal Street Investors, Inc. v. New Orleans Building Corp., 15-0924 (La.App. 4 Cir. 4/20/16), 193 So.3d278.

. As we stated in Two Canal Street Investors, Inc. v. New Orleans Building Corp., 15-0924, - pp. 3-4 (La.App. 4 Cir. 4/20/16), 193 So.3d 278,282; ’
On April 23, 2015, after submitting a Public records Request to the City and a formal protest letter to the NOBC, TCSI filed a Petition for Appeal and Declaratory Judgment to the district court seeking review of the NOBC’s decision to award the Lease to Carpenter/ Woodward, and a declaration that the selection process was invalid. TCSI later amended its petition requesting the issuance of a temporary restraining order and adding claims for injunctive relief. „ After conducting an emergency TRO hearing, the district court denied the request for a temporary restraining order. Thereafter, Carpenter/Woodward intervened as a party defendant.

. Previously, this court had ordered the president and director of TCSI, Mr. Fisher, to appear for a deposition in New Orleans. Two Canal Street Investors, Inc. v. New Orleans Building Corporation, 15-0555, unpub. (La. App. 4 Cir. 6/1/16), on rehearing, 15-0555, unpub. (La. App. 4 Cir. 6/17/16). In ordering that he appear for a deposition, we stated on rehearing;
As clearly pointed out in the application for rehearing of the respondents-in-writ, Carpenter & Company, Inc., Woodward In *1008 terest, LLC, and Two Canal Owner, LLC, Stuart C. Fisher is the president and a director of the relator, Two Canal Street Investors, Inc. ("TCSI”). As TCSI is a Louisiana corporation, and obviously a close corporation, with its offices in Louisiana, Mr, Fisher is/was appropriately to give his deposition in Louisiana as the trial judge had ruled. By the literal language of their original writ application (pages 1 through 21, inclusive) filed in this court on 1 June 2016 at 8:36 a.m.in 'which expedited consideration was requested, TCSI indicated in words and tone to this court that Mr. Fisher was a non-party to the litigation and a resident and an apparent citizen of the state of Florida; he was being required to come to Louisiana for his deposition; in context, those 21 pages did everything to imply that Mr-, Fisher was a stranger to the suit other than a possible shareholder and that Mr, Fisher was not an officer or director of TCSI. We now know that buried within an attachment to TCSI’s writ application (the transcript of the 19 April 2016 hearing in the trial court) is the explicit admission by one of TSCI’s [sic] attorneys, Charline K. Gipson, that Mr, Fisher is/was in fact an officer and director of TCSI.
We admit the error in not catching this buried admission for if previously caught, our decision would have been exactly the opposite of what this court did rule, tó-wit, grant the writ application and reverse the trial court.
We grant the application for rehearing of the respondents-in-writ, reverse and vacate our earlier disposition of TSCI’s [sic] writ application, and deny TSCI’s [sic]' writ application at its cost. [Footnotes omitted.]
No supervisory review of this court’s decision was sought by TCSI. In brief, the appel-lees assert that Mr. Fisher has still not submitted to the deposition.

. See also La. R.S. 13:4533 ("costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs"), La. R.S. 13:3666 B ("court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment...”); Carter v. Phillips, 337 So.2d 187 (La. 1976) (discussed in detail, infra)) Whitson v. American Ice Co., 164 La. 283, 113 So. 849 (1927);- cf. La. R.S. 13:4522 (quoted at footnote 20, infra.)

. La. C.C.P. art. 963 states:
If the order applied for by written motion is one to which mover is clearly entitled without supporting proof, the court may grant the order ex parte and without hearing the adverse party.
If the order applied for by written motion is one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party.
The rule to show cause is a contradictory motion.

. While the appeal was pending in this court, the defendants and Carpenter-Woodward filed in this court an ex parte motion to dismiss TCSI’s appeal; because of our ultimate decision herein, we find it neither necessary nor mandatory that we address the motion. Further, the defendants and Carpenter-Woodward filed a peremptory exception of no right . of action asserting that TCSI is a corporate shell based upon deposition testimony of A1 M. Thompson, Jr. We find it inappropriate for this court to consider this exception in light of La, C.C.P. art. 929 B, which states:
If the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. If the peremptory exception has been pleaded after the trial of the case, the court may rule thereon at any time unless the party against whom it has been pleaded desires and is entitled to introduce evidence thereon. In the latter event, the peremptory exception shall be tried specially. [Emphasis supplied.]
That is, the trial court heard an exception of no right of action, but it had not issued a judgment thereon at the time it issued its judgment dismissing TCSI’s suit for noncompliance with La. R.S. 13:1215. We find it appropriate for the trial court to rule upon the exception, not for this court to step into the trial court’s statutory duty to rule. Moreover, an exception of no right of action requires evidence, which the mover enters in evidence and which the defendant-in-rule may rebut with evidence. Since this court has no method to receive evidence other than a hearing in the trial court to receive same, a remand to the trial court to hear evidence is almost always appropriate,

.In their appellate brief, appellees make much of the failure of TCSI to do anything in the trial court once the motion to post securi- . ty was filed. Although preferable for TCSI to have either opposed the motion by seeking a contradictory hearing in the trial court either before entry of the order or after, or sought supervisory review of the order once issued, it was not obligated to do so. They did in fact file a memorandum in opposition. TCSI chose *1010 to appeal the final judgment that dismissed its suit. By doing so, it is not deprived of defenses to the order and the resulting judgment, much in the same way that a person who has a judgment confirming a default rendered against him can assert defects in the proceedings.

. La. C.C.P. art. 1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
It is clear that the article is applied post-judgment after a determination of the merits of the case.

. Stone Pigman Walther Whitmann, LLC are attorneys for NOBC.

. The record indicates that Mr. Wegmann is an attorney for only the intervenors. Mr. Courson is an attorney for only NOBC. Mr. Swensek is an attorney for only the City and Ms. Kleinpeter-Zamora.

. We understand these fees to be mostly, if not totally, in the nature of presumptively non-recoverable expert fees, to-wit, fees related to consultation services performed by the experts for the client and the client’s attorneys. They have to date only been incurred in preparation for trial They obviously have not yet been incurred in the merits trial.

. Obviously, the depositions have not yet been use at the trial on the merits and it is premature to determine whether they will ever be recoverable in whole or in part.

. See footnote 14 above.

. See footnote 13 above.

. Ibid.

. We do note that the "intervention” process has existed under Louisiana law for many years. Louisiana Acts 1880, No. 136 established that which is La. R.S. 13:1215. At the time Act 136 was passed, Louisiana’s Code of Practice recognized intervention as a Louisiana procedural device. La. Code Prac. arts. 389, ef seq. (1870); see also Ardry’s Wife v. Ardry, 16 La. 264, 1840 WL 1359 (1840). Thus, in 1960, when La. C.C.P. art. 1040 ("Unless the context clearly indicates otherwise, wherever the words ‘plaintiff’ and ‘defendant’ are used in this Code, they respectively include a plaintiff and a defendant in an incidental demand.” [Emphasis supplied.]) became part of our statutory law, the legislature did not amend La. R.S. 13:1215. Although we agree with the assertion by the defendants and the intervenors that Louisiana courts often apply definitions from the Louisiana Code of Civil Procedure to interpret words in the Louisiana Revised Statutes, we cannot do so in this case. This is because La. C.C.P. 1040 expressly limits its definitions to words used in the Code of Civil Procedure. Thus, we reject this argument.

. Although not applicable per se in this case, La, C.C.P. art. 642 provides:
If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:
(1)To what extent a judgment rendered in the person’s absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures. .
(3) Whether a judgment rendered in the person’s absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

. La. R.S. 13:4522 states:
The defendant before pleading in all cases may by motion demand and require the plaintiff or intervenor to give security for the cost in'such case, and on failure to do so within the time fixed by the court such suit or intervention, as the case may be, shall be dismissed without prejudice. This section shall not apply to the Parish of Orleans and to cases brought in forma pauper-is, nor to the state or any political subdivision thereof [Emphasis supplied.]
We specifically note that this statute does not apply to suits in Orleans Parish, and un: like La. R.S. 13:1215, does not apply to the state or a political subdivision of the state. Further, by its literal terms, it limits the request by the defendant to be made before the defendant pleads, which is not the situation in the case at bar. It also appears to presume that the intervenor is uniting with the plaintiff, not the defendant.

. We recognize that La. R.S. 13:1215 is in that part of the Louisiana Revised Statutes relative only to the Clerk of Civil District Court for the Parish of Orleans; however, we find the provision broad enough to mean all costs that may be established objectively by reference to regulation such as the sheriff's fee for service of pleadings. Such is customary. -

. La. R.S. 13:4521 A(l) states in pertinent part:
Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S, 48:451.3, and as provided in this Subsection, the state, any political subdivision as defined in this Section, and any agent, officer, or employee of any such governmental entity when acting within the scope and authority of such employment or when discharging his official duties may temporarily defer court costs, including cost of filing a judgment dismissing claims against the state, political subdivision, or agent, officer, or employee thereof, in any judicial proceeding instituted or prosecuted by or against the state, any political subdivision, or agent, officer, or employee thereof in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans. ...Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pen-dency of such deferment; however, when a final judgment is rendered dismissing all claims against the state, a political subdivision, or agent, officer, or employee thereof and when the judgment taxes costs of the state, political subdivision, or agent, officer, or employee thereof against the opposing party in accordance with the provisions of Code of Civil Procedure Article 1920, the opposing party shall be condemned to pay the temporarily deferred court costs. [Emphasis supplied.]