*margin note: SUCCESSION OF MOSSY.*

---

## WILTZ et al. *v.* PETERS et al.

Where certain stockholders of a bank, who had been appointed commissioners of an election for directors, and whose duty it was to ascertain the legality of any disputed votes, receive certain votes though objected to when offered, and sign, on the day of election, a certificate from which it appears that certain individuals obtained the plurality of votes necessary to an election, they will not be allowed to urge, in an action to annul the election, that any portion of the votes so received by them were not given according to law, nor that they were given by persons not *bonâ fide* owners of the shares on which they voted. *Per Curiam*: Though, under our legislation, any stockholder has a right to enquire, by a *quo warranto*, into the election of those who assume to administer the corporation of which he is a member, a stockholder may have so acted as to render himself incompetent or disqualified to become a relator. Where the wrong complained of was the result of his own misconduct or neglect, or he has acquiesced or concurred in it, he will not be listened to. And although a corporator will not be permitted to impeach a title conferred by an election over which he presided, or the legality of the votes which he himself, as commissioner, received, nor to contest an election in which he has concurred; yet, if one should concur in an election in ignorance of some fact making it invalid, and should afterwards show the objection, and that it has come to his knowledge since the election, he should be heard, consent, induced by error, not being binding in the eye of the law. Without undertaking to say to what extent these principles apply to municipal corporations, we have no hesitation in recognizing their application to private corporations.

APPEAL from the Second District Court of New Orleans, *Canon* J. *Prentiss* and *L. Peirce* for the plaintiffs. *Hunt, Grymes, Lockett* and *Goold*, for the appellants. The judgement of the court, (King, J. absent,) was pronounced by

SLIDELL, J. The petitioners seek by the present proceeding, which is in the nature of a *quo warranto*, to oust the defendants, *Peters* and others, from the directorship of the Louisiana State Bank. They also ask a *mandamus* commanding *Vignie* and others to issue an advertizement for a new election, they being the persons who constituted the board of directors, prior to the alleged illegal election, under color of which *Peters* and others had assumed to act. All the directors of the board, except two, have answered: "That the said board of directors of the Louisiana State Bank did not deem themselves authorized, from the return of the judges of the election, for the election of directors of said bank, held on the 5th instant (February, 1849,) to order a new election of directors to be made; and could not therefore issue advertizements for another election to be held:" Wherefore they say, "they submit to such judgement and mandate.

as the nature of the case may require, and as may be finally rendered in the premises." The two members of the old board who did not join in this answer, are members of the new board; and, as they claim to hold under the new election, must be considered as virtually concurring in the position taken by their associates in the old board. The whole of the former board, therefore, must be regarded as acquiescing in the validity of the election of the new board and in their continuance in power. It is obvious then, that the contest in this cause is between *Dufilho*, *Wiltz* and *Dupré*, on the one hand, and the newly elected board on the other, who, upon the face of the pleadings, are at least directors *de facto*, under the color of election.

The first question which demands our consideration is, can the plaintiffs be heard as relators?

As the general rule it may be conceded that, under our legislation, any stockholder has a right to inquire, by the remedy of *quo warranto*, into the election of those who assume to administer the corporation of which he is a member. But while the defendants do not dispute the general rule, they contend that a party may have so acted as to render himself incompetent or disqualified to become a relator. They argue, "that where the wrong complained of was the result of the party's own misconduct or negligence, the court will refuse an application by him, or at his instance; that the law will not permit any one to play fast and loose—to establish, or overturn the effects of his own actions, as may prove most beneficial to him—if it suits him, to take advantage of his own conduct and say nothing—if it does not accord with his views, to declare his own conduct illegal, and avoid his own acts." The authorities cited by the defendants fully sustain this position, and have not been met by any conflicting decisions.

In the case of *King* v. *Clarke*, 1 East. 47, it was observed:—"The court have indeed on several occasions said, and said wisely, that they will not listen to a corporator who has acquiesced, or perhaps concurred, in the very act, which he afterwards comes to complain of when it suits his purpose." In *Rex* v. *Stythe*, 6 Barn. and Cres. 240, Abbott C. J. says: "It has generally been considered a rule of corporation law, that a person is not to be permitted to impeach a title conferred by an election in which he has concurred, or the title of those mediately or immediately derived from that election. But in order" said he, "to prevent any misunderstanding upon this point, I will add that, if a person should concur in an election in *ignorance* of some fact making it invalid, and should afterwards come before the court, and show the objection, and *that it has come to his knowledge since the election*, and that it is a matter which ought to be enquired into, I would by no means have it inferred from the decision in the present case that, such an application ought not to be heard." In the *Queen* v. *Greene*, 2 Adolp. and Ellis, 463, Denman, C. J. observed: "The principle which precludes a party, having acted as the relator did in this instance, from applying afterwards to set the proceedings aside, is the same which prevails in other cases, namely, that a man shall not take his chance of inconsistent advantages." And Coleridge, Justice, on the same occasion, assumed it to be the settled rule, "that a man shall not apply to the court as relator, if he has concurred in the irregularity of which he complains." See also Angell and Ames, on Corp., p. 707.

Without undertaking to say to what extent these opinions would be followed in this country in questions concerning municipal corporations, we have no hesitation in recognizing their propriety as applied to private corporations. Such being the well settled doctrine, it remains to be considered how far it is applicable to the case at bar.

The petitioners allege that they were appointed commissioners of election for directors of the bank, and that, acting in that capacity, they received votes to which objection had been made. The certificate which they themselves signed, on the 5th of February, shows that the defendants, who now claim to be the duly elected directors of the bank, obtained a plurality of the votes offered at the election, and received by the plaintiffs themselves in their capacity of judges. It is now charged by the petitioners that a large portion of the votes were not given according to law, and were given by persons not *bonâ fide* owners of the shares. But although objections, as it is alleged in the petition, were made at the time, to the reception of those votes, the plaintiffs themselves, whose duty it was to ascertain the disputed legality, received them. Under such circumstances, we are of the opinion that they cannot be heard as relators.

It is proper to observe that, although the plaintiffs, as commissioners, acting with the two other commissioners, *Hermann* and *Rochereau*, received all the votes, notwithstanding objections made by stockholders at the time, and signed, on the day of election, a certificate showing the number of votes given to the respective candidates, the three plaintiffs signed, two days afterwards, but without the concurrence of the other two commissioners, a declaration that they decline to certify or declare either ticket elected. But we cannot perceive how this subsequent declaration destroys the effect, of their previous reception of the votes, upon the question of their competency now to impeach, as relators, the legality of those votes. The declaration on the 7th stands in conflict with their acts on the 5th.

It is also proper to add, in this connection, that the only protest of the stockholders against the reception of votes exhibited in the record, is a protest made by the successful candidates.

We are not to be understood as saying that a party can, in no case, be heard to impeach an election over which he presided, and the legality of votes which he himself, as commissioner, received. A case might occur where the illegality rested upon facts, as to which the party subsequently complaining was ignorant at the time, and was without the means of knowledge. Consent induced by error is not binding, in the eye of the law. But the petition contains no such allegation; and no foundation therefore has been laid in the pleadings, nor even in the evidence, for a departure from a wholesome and equitable general rule.

A variety of points were discussed at bar, upon which, in consequence of the views already expressed, we do not deem it necessary to enlarge. It is, however, not improper to observe that, although the charter of the bank declares that the directors shall be elected by a plurality of the votes of qualified stockholders, and although the petitioners have admitted in the petition that the persons whose amotion is asked had a nominal majority, they have not proved that a single illegal vote was given in favor of those persons, nor even that a single illegal vote was received at all.

Three of the defendants, *Peters, Shaw* and *Converse*, filed an answer, in which they aver "that they have resigned the offices of directors of the Louisiana State Bank, under the election set forth in the petition, and disclaim all title to be directors of the said bank, in virtue of said election." It was alleged, in the petition, that *Peters, Converse* and *Shaw* were, at the time of their being voted for, directors of the City Bank, and so continued until after the 5th instant, It is questionable whether the disclaimer, as framed, is to be deemed an admission, on their part of the existence of the alleged disability. But if it be so considered, it

cannot be regarded as binding on the other defendants, who have not concurred in it, nor on the corporation. No evidence has been adduced that such disability existed; and the plaintiff's counsel, in his brief, admits that the disclaimer by the three in no manner alters the issue as to the other six, who formally denied all the allegations of the petition, except such as were expressly admitted. It is proper to add that, the appeal is taken by the six directors.

While it is the duty of our courts to grant the extraordinary remedy of *quo warranto* to all those who are entitled to it under the liberal provisions of our Code, it is equally their duty to administer the remedy with reference to the principles recognized in that jurisprudence from which the writ was derived, so far as those principles are consistent with the spirit of our institutions, and with sound reason and equity. Dissensions and lawsuits between the members of a corporation, like quarrels in a family or partnership, are dangerous to its well being; and those who bring matters pertaining to its administration before the tribunals, ought not only to prove that irregularities have been committed, but should also be free from the objection of having participated or acquiesced in them. A court of justice, in such cases, cannot be expected to take assertions for proof, nor even to hear a party whose complaints are inconsistent with his own conduct.

When any competent stockholder presents before us a case in which the irregularities are proved, which are complained of by the plaintiffs, and are, in their turn, asserted in recrimination by the defendants, it will be our duty to declare their legal effect. Until then it is unnecsssary, and would be improper, to do so.

Upon the question of the jurisdiction of this court, which was suggested by the plaintiffs, we deem it unnecessary to do more than refer to the reasons given by the district judge, on the motion taken below to set aside the order of appeal. The allegation of the petition was, that the new directors did "induct themselves, on the 12th inst., into the bank as directors, and, so pretending themselves, did proceed to elect *Samuel J. Peters*, as their president, and have taken unlawful possession of the said institution, to the loss and injury of the stockholders to a large amount, and of your petitioners in particular, as stockholders, in a sum exceeding $5000."

It is therefore decreed that, the judgment of the court below be reversed, and that the petition of the plaintiffs be dismissed; the plaintiffs paying the costs in both courts.