**STATE ex rel. PALFREY et al. v. SIMMS et al.**

No. 14500.

Court of Appeal of Louisiana.
Jan. 29, 1934.

For former opinion, see 150 So. 428.

H. W. & H. M. Robinson and Geo. E. Konrad, all of New Orleans, for appellants.

Chas. I. Denechaud and Ernest J. Robin, both of New Orleans, for appellees.

HIGGINS, Judge.

Relators, as policyholders of an industrial life insurance company, instituted quo warranto proceedings for the purpose of being recognized and installed as directors, claiming to have been elected at a meeting held in accordance with the charter and by-laws of the corporation at 4 p. m., November 7, 1932, and also asked for a writ of injunction to prevent the respondents from interfering with them in the enjoyment of their office.

Defendants claim that they were duly elected in accordance with the provisions of the charter and by-laws at a meeting of the policyholders held at 9 a. m. on November 7, 1932, at which time 2,773 votes by proxy and 7 in person, representing the entire attendance of the policyholders at the meeting, were cast in their favor as directors.

There was judgment dismissing the suit, and plaintiffs have appealed.

When this matter originally came before us, we held that a writ of quo warranto would not issue to try title to an office in a private corporation, this remedy being confined to offices of public corporations. 150 So. 428.

In the petition for rehearing it is pointed out that our decision was based upon the case of Jones et al. v. Carradine, 147 So. 554, where we followed the English and the Massachusetts rule, but that the overwhelming weight of authority of the other states of the Union, including Louisiana, is to the contrary, to the effect that a quo warranto proceeding is the proper remedy to test title to office in a private corporation.

In State ex rel. N. W. Colonization & Imp. Co. v. Huller, et al., 23 N. M. 306, 168 P. 528, 530, 1 A. L. R. 170, the court said:

"The first question to be considered is whether an information in the nature of quo warranto is the proper remedy to try the title to office in a private corporation. In this jurisdiction we unfortunately have no statute upon the subject of this remedy and are left entirely to the common-law principles and our interpretation of the scope of the statute 9th Anne, chapter 20. The English rule is that to justify the employment of quo warranto to try title to office it is essential that the office be such as the law deems of a public nature. The Massachusetts courts seem to be the only American courts which follow the English rule. All other American courts agree in holding that an action of quo warranto, or in the nature of quo warranto, is the proper remedy to test the right of office in a private corporation."

And in Brooks v. State ex rel. Richards, 3 Boyce, 1, 79 A. 790, Ann. Cas. 1915A, 1123, the Supreme Court of Delaware held that quo warranto was the proper remedy to test title to office in a private corporation. This decision is reported in 51 L. R. A. (N. S.) 1126, where it is followed by a thorough and comprehensive annotation, in which the conclusion as to the law is stated, as follows:

"The Massachusetts courts seem to be the only American courts which follow the English rule. They have held that an information in the nature of a quo warranto is not the proper remedy to try the title to offices in a private corporation. * * *

"All other cases upon the point agree with Brooks v. State in holding that an action of quo warranto, or in the nature of quo warranto, is the proper remedy to test the right to an office in a private corporation. * * *"

In Corpus Juris, vol. 51, p. 318, § 14, we find the following: "Except in some jurisdic-

tions, quo warranto, or an information or action in the nature thereof, is a proper remedy to try title to office in a private corporation; it is so provided by statute in a number of jurisdictions, and, apart from statute, an office in a private corporation, created and chartered by the state, is deemed to be of a public character, or the public is deemed to have an interest therein, in such a sense and to such an extent as to render the remedy available against a person who, not being lawfully entitled to do so, holds the office."

See, also, footnote 39(a), vol. 51, C. J., p. 318.

In the case of Wiltz et al. v. Peters et al., 4 La. Ann. 339, a proceeding in which stockholders sought writs of quo warranto to oust bank directors, our Supreme Court, on page 340, said: "As the general rule it may be conceded that, under our legislation, any stockholder has a right to inquire, by the remedy of quo warranto, into the election of those who assume to administer the corporation of which he is a member."

In State v. New Orleans J. & G. N. R. R. Co., 20 La. Ann. 489, the state of Louisiana was a stockholder of the railroad company and petitioned the court for writs of quo warranto against various officeholders of the company. The Supreme Court stated that the state should have the same rights and privileges as other stockholders and granted the writ.

In State v. Ramos, 10 La. Ann. 421, it was also decided that the remedy by quo warranto is not limited strictly to the cases set forth in the Code of Practice.

■ Articles 868 and 869 of the Code of Practice, dealing with the subject of the writ of quo warranto, read as follows:

"Art. 868. This mandate is only issued for the decision of disputes between parties in relation to the offices in corporations, as when a person usurps the character of Mayor of a city, and such like. With regard to offices of a public nature, that is, which are conferred in the name of the State by the Governor, with or without the consent of the Senate, or by election, the usurpations of them are prevented and punished in the manner directed by special laws.

"Art. 869. A mandate to prevent the usurpation of an office in a city *or other corporation* may be obtained by any person applying for it, and the party to whom it is directed must make his answer in writing within the time allowed by the court, and state the authority under which he exercises his office.". (Italics ours.)

The above language with reference to the office of mayor of a city we believe to be merely illustrative and not restrictive; otherwise there would be no remedy in cases of usurpation of private office, because the law

is clear that the question of title to office cannot be determined by a writ of injunction.

See, also, Reynolds v. Baldwin, 1 La. Ann. 165; 22 R. C. L., page 666, § 7; R. C. L. Permanent Supplement, vol. 7, page 5246, § 7; Komarynski v. Popovich, 218 Mich. 481, 188 N. W. 386.

From the above authorities we conclude that in our original opinion and in the case of Jones et al. v. Carradine, supra, we erred in following the minority view of England and Massachusetts, and that the correct rule is that quo warranto is the proper remedy to test title to office in a private corporation.

We may add that in a well written and carefully considered article appearing in the Tulane Law Review, vol. 8, No. 2, February, 1934, page 187, the author thereof reached the same conclusion as we do, both in his interpretation of the articles of the Code of Practice and with reference to the weight of authority on this question in the United States.

■■ Did the charter and by-laws of the corporation require that the meeting at which the board of directors were to be elected should be held at 4 o'clock p. m. on Monday, November 7, 1932? The determination of this issue depends upon the construction of the following provisions of the charter and by-laws, which read as follows:

Charter, art. 6: "Said board of directors shall be elected by ballot at a general meeting of the policyholders or holders of certificates of the corporation to be convened on the first Monday in November, 1932, and every five years thereafter on the day and month aforesaid mentioned, at the principal office of the corporation in the City of New Orleans."

By-laws, art. 1, § 1: "The annual meeting of the shareholders of the company shall be held at the principal office of the company in New Orleans, at 4 o'clock p. m., on the first Tuesday of January of each year, if not a legal holiday—but if a legal holiday, then on the next business day succeeding—for the purpose of transacting such business as may be brought before the meeting and also for receiving reports: provided that the first election of officers shall be held on the first Monday of November, 1932."

Relators contend that this section of the by-laws fixes the hour of the meeting as 4 o'clock p. m., and, therefore, the meeting held at 9 o'clock a. m. was premature and illegal.

It will be observed that the language quoted from the by-laws refers solely to the annual meeting of the shareholders, which is held for the purpose of transacting any business which might be brought before the meeting and also for the purpose of receiving reports. That meeting must be held on the first Tuesday in January of each year. The meeting of the shareholders authorized by the quoted

provision of the charter, at which directors are to be elected, should be convened on the first Monday of November, 1932, and every five years thereafter. The language of the charter, therefore, does not fix any definite hour of the day when the meeting shall be held where the directors are to be elected. As we read the two above-quoted paragraphs, they are separate and independent of each other and deal with different subject-matters. We, therefore, conclude that the hour of 4 o'clock p. m. only refers to the annual meeting of the policyholders and not to the policyholders' meeting to be held every five years for the purpose of electing the board of directors. Since there was no provision fixing the hour of the latter meeting, the members of the board of directors had the power and authority to fix the time of the meeting at 9 o'clock a. m.

This hour was not an unusual one, but was reasonable, and the evidence shows that it was designated, so that the meeting could be extended over such portion of the day as might be necessary, since it was anticipated that there would be extensive discussion and a spirited contest over the election.

█ Relators next complain that the publication of the notice of the meeting was insufficient because it was inserted in a daily paper of the city of New Orleans twice, on Sunday, October 16, 1932, and Sunday, October 23, 1932, and that the charter provided that the notice should be published for fifteen days in a daily newspaper. The pertinent part of the charter reads as follows:

"Fifteen days' written notice, published in a daily or weekly newspaper in the City of New Orleans, shall be given said policyholders or holders of certificates of this corporation of all elections. * * *"

There can be no doubt that under this language the board of directors of the company had an option of publishing the notice either in a daily or weekly newspaper in the city of New Orleans, where both kinds of papers are published. If they had chosen to publish it in a weekly newspaper, it would have been impossible to have the notice published daily. Thus, it will be seen that the publication of the notice in a weekly newspaper is entirely inconsistent with the idea and intention of giving daily notice within the fifteen-day period. It is most difficult for us to believe that the framers of this provision of the charter intended that, if the daily paper was selected as a means of publication of the notice, that it should appear fifteen different times, whereas, if a weekly paper was chosen, the notice would only have to appear twice. The only reasonable interpretation that we can place upon the language is that it was the intention of its authors to have written notice of the meeting published at least fifteen days before the meeting, in either a daily or weekly newspaper.

██ Relators also attack the legality of the proxies used by the respondents in their election. The evidence offered is meager and to the effect that one witness saw some of the clerks in the office write the names of several parties on some of the proxies. Even conceding that these particular proxies were forged, we do not believe that that raises the presumption that all of them were fraudulent. It is our view that the relators had the burden of showing that a number of the proxies sufficient to affect the result of the election were illegal and fraudulent, but this they have failed to do.

█ It was also contended that the charter of the corporation provided that the company shall be governed by ten directors and that on the occasion of this protested meeting an illegal attempt was made to amend the charter by reducing the number to six. This contention rests upon the ground that the charter provides that it cannot be amended except upon a vote of two-thirds majority of all the policyholders and that the evidence shows that there were about 5,500 policyholders and only 2,773 were represented at the meeting. Conceding that the attempt to amend the charter was illegal, we do not believe that that affects the respondents' claim to the title of the office because only 6 of them were elected and the charter provided that there should be 10 of them. If 6 of the directors are otherwise legally elected and 4 more should be selected, it would appear to us that this circumstance does not affect the title to office of those who were properly elected and would simply require an election for the selection of 4 additional directors.

██ Finally, it is said that where the proceedings leading up to the meeting and the meeting were conducted in bad faith and unfairly, the injured policyholder should have the right to have the entire matter set aside. The evidence in reference to this point shows that there was some disposition on the part of the respondents, who were the officers of the company, not to permit their opponents, relators, to examine the books of the company to determine who were policyholders in order that they could also solicit proxies for the impending contest. We may also say that there was, in the beginning, some undue and unnecessary interference with the relators when they attempted to get the information sought, but subsequently the books were turned over to them and a list of the names and addresses of some of the policyholders were made by the relators. The officers of the company were wrong in originally refusing to permit the relators to examine the books of the company for that purpose because they had a perfect right to obtain the information de-

sired and should have received the cooperation of the officers of the company, rather than their opposition in that respect. If we believed that this interference was responsible for the defeat of those who sought to enter the directorship contest, we would be disposed to say that the election was illegal, but the reason why the relators were unsuccessful in their purpose was because they failed to ascertain the hour that the meeting was to be held, presuming that it would be at 4 o'clock in the afternoon, instead of 9 o'clock in the morning, as specified in the notice.

We conclude that the trial court was correct in dismissing the suit.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

WESTERFIELD, Judge (concurring).

Being of opinion that the writ of quo warranto is not the proper remedy, for the reasons given in Jones et al. v. Carradine (La. App.) 147 So. 554, I respectfully concur in the decree.