# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 24-136 consolidated with 24-137

**EVANGELINE SHRINE CLUB HOLDING CORPORATION THROUGH ITS PROPER AND DULY AUTH OFFICERS AND DIRECTORS WILLIAM POWELL, THOMAS KUSSMAN AND DAVID HYATT**

**VERSUS**

**GERARD HEBERT, JOHN DOUCET, RYAN CORMIER AND DANIEL HEBERT**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20233664 C/W 20235218
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Edward P. Landry**
**Landry Watkins Repaske & Breaux**
**P. O. Box 12040**
**New Iberia, LA 70562-2040**
**(337) 364-7626**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **John Doucet**
    **Ryan Cormier**
    **Evangeline Shrine Club Holding Corporation, et al.**
    **Evangeline Masonic Club Holding Corporation**
    **Daniel Hebert**
    **Gerard Hebert**

**George A. Veazey**
**Veazey, Felder & Renegar, LLC**
**P. O. Box 80948**
**Lafayette, LA 70598-0948**
**(337) 234-5350**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Habibi Shriners**

**Karly Dorr**
**Frank X. Neuner, Jr.**
**Neuner Pate**
**1001 W. Pinhook Road, Ste 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Thomas Kussman**
    **Evangeline Shrine Club Holding Corporation, et al.**
    **David Hyatt**
    **Evangeline Masonic Club Holding Corporation**
    **William Powell**

**ORTEGO, Judge.**

This appeal involves two consolidated civil matters. The first case involves a petition for writs of quo warranto and mandamus with a summary trial thereon filed against individuals purporting to be officers/directors of a club and holding corporation. The second case involves a petition to nullify amended articles of incorporation, to remove officers and directors, to grant a preliminary injunction and to request a temporary restraining order. Relevant to this appeal, defendants in the first case filed an exception of nonjoinder of indispensable parties.

The central issue in these consolidated cases is control of a club and holding corporation formed and operating under the rules of both an intermediate and parent organization. Control of the club and holding organization is determined by which individuals are valid officers/directors of the club and holding corporation.

The trial court overruled the exception of the defendants in the first case, and found that: (1) via the writ of quo warranto, the defendants in the first case were not valid officers/directors of the club and holding corporation; (2) that the amendment to the holding corporation's articles of incorporation was null; (3) that, via writ of mandamus, defendants in the first case were to deliver all business records, papers, assets, and effects related to their roles as officers/directors of the club and holding corporation to the head of the intermediate organization or those designated by that organization as acting representatives of the club and holding corporation. The defendants in that first case appeal.

## FACTS AND PROCEDURAL HISTORY

Shriners International, formally known as the Ancient Arabic Order of the Nobles of the Mystic Shrine (A.A.O.N.M.S.), is a 501(c)(3) non-profit organization incorporated in Iowa and headquartered in Tampa, Florida. It owns and operates Shriners Hospitals for Children.

This parent organization establishes intermediate organizations, called temples, throughout various countries around the world. These temples are headed by an individual called a potentate, who controls and governs certain geographical areas.

Temples then oversee clubs, which usually are set up for smaller, specific geographical areas. These clubs operate under the temple that controls the larger area in which the club is located. Under the Articles of Incorporation of Shriners International, the parent organization, Shriner Clubs may set up holding corporations whose purpose is to hold assets obtained by the clubs.

In the case before us, the Habibi Temple, located in Lake Charles, LA, is the temple over the geographic area wherein the club at issue, Evangeline Shrine Club, is located in Lafayette. LA. The potentate of the Habibi Temple is Kirby Vinson. The Habibi Temple is the intermediate organization over the Evangeline Shrine Club (hereinafter "the Club"). The Club set up the Evangeline Shrine Club Holding Corporation (hereinafter "the Holding Corporation") in 1961 pursuant to La.R.S. 12:101-1565. The Holding Corporation amended its Articles of Incorporation on May 18, 1987. The Leadership of the Holding Corporation consists of a Board of Directors and Officers, largely one and the same as the elected Officers of the Club.

The dispute in these consolidated cases involves who are the rightful officers/directors of the Holding Corporation. In mid to late 2022, disputes arose between the Club and the Holding Corporation's leadership and the Habibi Temple and its Potentate over the Club's failure to timely report financial information and as to whether use of the Club's facility was in line with the non-profit purposes established by Shriners International. Thereafter, on February 10, 2023, potentate Vinson removed Defendants/Appellants, Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert as officers of the Club, and as such, directors/officers of the Holding Corporation, and appointed Petitioners, William K. Powell, Thomas

Kussmann, and David Hyatt, as the officers/directors of the Club and Holding Corporation.

On February 22, 2023, Defendants, Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert, filed suit for declaratory judgment, injunction, and damages against Petitioners and Potentate Vinson. Defendants later dismissed the action without prejudice.

Thereafter, on July 11, 2023, William K. Powell, Thomas Kussmann, and David Hyatt (collectively "Petitioners"), on behalf of the Holding Corporation, filed a petition for writs of quo warranto and mandamus with a summary trial thereon against Defendants/Appellants, Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert (collectively "Appellants"). In response, Appellants filed an exception of nonjoinder of indispensable parties, naming Shriners International and Habibi Temple as indispensable parties.

On May 30, 2023, Appellants, at what they documented as a meeting of the Holding Corporation, proposed amendments to the Holding Corporation's Articles of Incorporation amending, inter alia, its name to Evangeline Masonic Club Holding Corporation and the number of members necessary for a quorum to be present to conduct business. Paperwork denoting these amendments was filed with the Louisiana Secretary of State in August of 2023.

On September 18, 2023, Habibi Shriners filed a petition against both Petitioners and Appellants to nullify those amended articles of incorporation, to remove officers and directors, to grant a preliminary injunction, and to request a temporary restraining order against the Evangeline Masonic Club Holding Corporation, formerly the Holding Corporation. The case of Petitioners against Defendants, and the case of Habibi Shriners against both Petitioners and Defendants, were consolidated.

On November 14-15, 2023, a two-day trial was held. The trial resulted in judgment: (1) overruling Appellants' exception of nonjoinder of indispensable parties; (2) granting Petitioners' writ of quo warranto based on a finding that Appellants failed to carry their burden to prove they were valid officers/directors of the Club and Holding Corporation; (3) granting Habibi Temple's request to find that Appellants' amendment to the Holding Corporation's Articles of Incorporation were null and; (4) ordering, by writ of mandamus, that Appellants deliver all business records, papers, assets, and effects related to their roles as officers/directors of the Club and Holding Corporation to Habibi Shriners Potentate, Kirby Vinson, and/or those designated by him or acting representatives of the Club and Holding Corporation.

Appellants file the appeal before us. They present four issues for review.

## ISSUES PRESENTED FOR REVIEW

1. Whether the Trial Court applied the appropriate facts and legal standard in overruling Defendants' Peremptory Exception of Nonjoinder of an Indispensable Party when considerable rulings were being made that directly granted relief to these non-named parties, Habibi Shriners and Shriners International based upon numerous rules and regulations governing these non-named parties and which were not recognized under Louisiana Law.

2. Whether Trial Court committed error in granting the Petitioners' Writ of Quo Warranto when the record clearly shows that the Defendants/Appellants, GERARD HEBERT, JOHN DOUCET, RYAN CORMIER, and DANIEL HEBERT[,] satisfied their burden of proof demonstrating they had authority to represent themselves as officers and directions of Evangeline Shrine Club and/or Evangeline Masonic Club Holding Corporation f/k/a Evangeline Shrine Club Holding Corporation.

3. Whether the Trial Court was proper when it went beyond the legal limitations allowed under the law when it ruled that all actions taken by the Defendants/Appellants in their capacity as officers and/or Directors of the Evangeline Shrine Club and or the Evangeline Shrine Club Holding Corporation since at least February 10, 2023 were found to be without effect.

4.     Whether the Trial Court committed error when it granted the Petitioners' Writ of Mandamus ordering the Defendants/Appellants to immediately deliver all business records, papers, assets and effects related to their roles as officers and/or directors of the Evangeline Shrine Club and/or Evangeline Shrine Club Holding Corporation to a nonparty, Habibi Shriners Potentate, Kirby Vinson and/or those designated by him or acting representatives of Evangeline Shrine Club and Evangeline Shrine Club Holding Corporation all of which is outside the legal scope of the legal limitations of a Quo Warranto ruling and beyond the authority allowed by the Louisiana Code of Civil Procedure.

## STANDARD OF REVIEW

### I.     *Exception of Nonjoinder of Indispensable Parties*

Appellants, in their first issue presented for review, contend that the trial court erred in overruling their peremptory exception of nonjoinder of indispensable parties. A trial court's denial of an exception of nonjoinder is reviewed using the abuse of discretion standard. *Crooks v. State through Department of Natural Resources*, 21-716 (La.App. 3 Cir. 6/29/22), 343 So.3d 248, *writ denied*, 22-1168 (La. 11/1/22), 349 So.3d 2.

### II.     *Writ of Quo Warranto*

In their second issue presented for review, Appellants contend that the trial court erroneously granted the writ of quo warranto. In their third issue presented, Appellants argue that there is nothing within a quo warranto that allows the court to reverse various actions taken while they were allegedly validly holding office.

When the issues presented in a quo warranto action are legal in nature, the standard of review is de novo. *Billiot v. Wiltz*, 16-1047 (La.App. 3 Cir. 5/24/17), 222 So.3d 964. However, factual findings in quo warranto proceedings are reviewed on appeal under the manifest error standard. *Metro City Redevelopment Coalition, Inc. v. Brockman*, 13-1615 (La.App. 1 Cir. 3/21/14), 143 So.3d 495.

5

*III. Writ of Mandamus*

In their final issue presented for review, Appellants assert that the trial court committed error when it granted the Petitioners' writ of mandamus.

> The denial of a writ of mandamus is reviewed by the court of appeal applying an abuse of discretion standard. The trial court's findings of fact in a mandamus action are reviewed for manifest error. Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the conclusions and that the fact finder is clearly wrong.
>
> Questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the de novo standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute.

*Zillow, Inc. v. Taylor*, 21-739, p. 4 (La.App. 3 Cir. 3/30/22), 350 So.3d 550, 554 (citations omitted).

## ISSUE PRESENTED FOR REVIEW- NUMBER ONE

Appellants assert, in their first issue presented for review, that the trial court erred in overruling their peremptory exception of nonjoinder of indispensable parties. According to Appellants, Habibi Shriners and Shriners International were indispensable parties because considerable rulings could be made that directly granted relief to Habibi Shriners and Shriners International based on numerous rules, by-laws, and regulations governing those parties.

Under La.Code Civ.P. 641, A person shall be joined as a party in the action when either:

> (1) In his absence complete relief cannot be accorded among those already parties.
>
> (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
>
>> (a) As a practical matter, impair or impede his ability to protect that interest.

6

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

This court, in *Johnson v. Strange*, 21-12, pp. 3-4 (La.App. 3 Cir 6/9/21), 323 So.3d 444, 446, quoting *Two Canal Street Investors, Inc. v. New Orleans Building Corp.*, 16-825 (La.App. 4 Cir. 9/23/16), 202 So.3d 1003, stated the following:

> [P]ursuant to Article 641: "Parties needed for just adjudication in an action are those who have an interest relating to the subject matter of the action and are so situated that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action." The court continued, noting: "A person should be deemed to be needed for just adjudication only when absolutely necessary to protect substantial rights." *Id.* at 1012.

The *Johnson* court went on to state, "[w]hen considering whether a party is needed, the court must conduct 'an analysis of the interests of the joined and nonjoined parties' and determine whether the action can proceed to judgment," *Id.* at 466 (citing *Lowe's Home Constr., LLC v. Lips*, 10-762 (La.App. 5 Cir. 1/25/11), 61 So.3d 12, *writ denied*, 11-371 (La. 4/25/11), 62 So.3d 89).

In the case before us, Appellants contend that Habibi Shriners and Shriners International are indispensable parties. This litigation involves a writ of quo warranto and a writ of mandamus. Regarding the writ of quo warranto, "[i]n a petition for quo warranto, the only parties 'necessary' are those claiming or vying for the office at issue." *Smith v. Cannon*, 43,964, p. 3 (La.App. 2 Cir. 1/28/09), 2 So.3d 1227, 1230. Here, neither Habibi Shriners nor Shriners International are vying for the offices at issue. Thus, the trial court did not abuse its discretion denying Appellants' exception as to the writ of quo warranto.

The writ of mandamus filed requested that Appellants turn over business records, papers, and effects related to their role as former officers to the Habibi Potentate, Kirby Vinson, and/or those designated by him or acting representatives of the Club. While Habibi Shriners and Shriners International may be interested in the

7

result of this litigation, the absence of these two parties does not preclude any party in these consolidated matters of complete relief nor does it subject any party to potentially multiple or inconsistent obligations. Further, neither Habibi Shriners nor Shriners International will endure a derogation of rights as a result of this litigation. Interest in the result of a litigation does not make a party indispensable. Therefore, we find that the trial court did not abuse its discretion denying Appellants' exception regarding the writ of mandamus accompanying the writ of quo warranto. Moreover, Habibi Shriners is a party to one of the consolidated cases.

Accordingly, we find no abuse of discretion by the trial court in denying Appellants' exception regarding the writ of mandamus, and this issue presented for review is without merit.

## ISSUE PRESENTED FOR REVIEW-NUMBER TWO

In their second issue presented for review, Appellants contend that the trial court erroneously granted the writ of quo warranto. They argue that the record clearly shows they satisfied their burden of proof demonstrating they had authority to represent themselves as officers and directors of the Club and Holding Corporation.

> A writ of "quo warranto" directs an individual to show cause by what authority he claims or holds office. La. C.C.P. art. 3901. A writ of "quo warranto" serves the narrow function of preventing the usurpation of office or of powers. [*State ex rel Palfrey v. Simms*, 152 So. 395 (La.App.1934)]. Unlike a mandamus, a writ of "quo warranto" is not an order directing the defendant to perform (or to cease performing) a certain act; rather, it is an order directing the defendant to show by what authority he or she is acting. La. C.C.P. art. 3901, Official Comment (e).

> In a "quo warranto" action, the defendant has the burden of showing by what authority he or she claims to hold office. *In re Interdiction of Vicknair*, 2001-0902, p. 4 (La.App. 1 Cir. 6/21/02), 822 So.2d 46, 50. If the court finds that burden is not met ("i.e.", that the defendant is claiming or holding office without authority), it is required to render judgment forbidding him or her from doing so. La. C.C.P. art.

3902. The court may also render judgment declaring who is entitled to office and, when necessary, directing an election be held. *Id.*

*Crutcher v. Tufts*, 04-653, pp. 6-7 (La.App. 4 Cir. 2/16/05), 898 So.2d 529, 533 (alterations in original).

Present in the record is the May 18, 1987 amendments of the 1961 Articles of Incorporation of the Holding Corporation. Article VIII, §8.1 of that 1987 amendment, entitled "Officers and Directors," states, "[t]he affairs and business of this Corporation shall be managed and conducted by a Board of Directors, consisting of . . . the persons who occupy the position of official Officers of the Evangeline Shrine Club . . . and the immediate Past President of the Evangeline Shrine Club."

Evidence in the record also establishes that the bylaws of the Holding Corporation were adopted by resolution also on May 18, 1987. Article III, paragraph 3.1 of those bylaws echoes the Articles of Incorporation, as amended in 1987, stating that "[t]he affairs and business of the Corporation shall be managed and conducted by a Board of Directors, consisting of . . . the official officers of the Evangeline Shrine Club. . . and the Past President of the Evangeline Shrine Club." Further, Article IV of those bylaws notes that the officers of the Club will hold those same offices in the Holding Corporation.

Appellants, as defendants to the writ of quo warranto, had the burden of showing by what authority they claimed to hold office with the Holding Corporation. Given the congruence of officers/directors of the Club and Holding Corporation, Appellants attempted to carry that burden by pointing to evidence that they were validly elected as officers of the Club in the form of minutes from meetings of the Club held on October 17, 2022, wherein nominations for officers were made, and on November 21, 2022, wherein election of officers transpired. Of consequence, those

9

minutes note *only* eight members were in attendance via telephone or video conference.

Appellants contend that because they have presented evidence of their valid election as officers of the Club, they are necessarily officers and directors of the Holding Corporation per its Articles of Incorporation and bylaws.

The bylaws of the Club, dated March 16, 1987, in Article IV, paragraphs 4.4 – 4.6, state (emphasis added):

> 4.4 The annual stated meeting of the Club *shall be held in December* of each year for purpose of electing and installing officers. Installation of newly elected officers of the Club shall take place as soon after their election as practical; all officers shall remain in office until their successors have been duly elected and installed or appointed as provided for hereinafter in Article VIII, paragraph 7.4.

> 4.5 The annual stated meeting of the Club shall also constitute the annual meeting of the members of the Evangeline Club Holding Corporation, which shall be held immediately following the annual stated meeting of the Club.

> 4.6 The annual stated meeting of the Club shall also constitute the annual meeting of the Directors of the Evangeline Club Holding Corporation, which shall be held immediately following the annual stated meeting of the Club and immediately following the annual stated meeting of the Evangeline Club Holding Corporation.

In *Morris v. Thomason*, 28,238 (La.App. 2 Cir. 4/8/96), 672 So.2d 433, *writ denied*, 96-1383 (La. 9/13/96), 679 So.2d 105, our sister court found the election of a board of directors was invalid because they had been elected at a meeting of a different type and at a different time specified to in the corporation's governing documents.

Here, Appellants contend they were validly elected as evidenced by minutes from these meetings. However, these meetings were not designated as the annual meetings, and secondly, were held in October and November of 2022 when the bylaws of the Club specified that elections can only be held at the Club's annual

meeting held in December. Thus, when reading the applicable bylaws of the Club, we find that Appellants' argument is misguided, and lacks merit.

Additionally, Article V, paragraph 5.4 of the Club bylaws states that (emphasis added): "**Fifteen (15) members** *shall constitute a quorum at any meeting of the club.*" The Club's requirements for a quorum are consistent with that of the Holding Corporation's Articles of Incorporation Article IX, §9.4 which state, "No business shall be transacted at any regular or special meetings of the membership unless a quorum is present. A quorum shall consist of fifteen (15) members of this Corporation present in person." The quorum of fifteen (15) is also consistent with the Holding Corporation's bylaws, which state in Article VI, paragraph 6.6, (emphasis added), "[n]o business shall be transacted at any regular or special meetings of the membership unless a quorum is present. *A quorum shall consist of fifteen (15) members of this Corporation **in person**.*"

We note the minutes in the record from the October 17, 2022 meeting, wherein nominations for officers were made, and the November 21, 2022 meeting, wherein election of officers transpired, show that only eight members were in attendance. Accordingly, the evidence in the record indicates that a quorum was not present at these meetings of the Club when Appellants were nominated and elected. Thus, we find that Appellants were not validly elected as officers/directors of the Club or the Holding Corporation.

Moreover, and regardless of the clear failure of Appellants to adhere to the Club's bylaws, for Appellants to be validly elected as officers of the Club, the record further indicates that even if they were elected officers by a valid election prior to February 10, 2023, the undisputed evidence shows that they were removed as officers of the Club and Holding Corporation by Potentate Kirby Vinson on that date of February 10, 2023.

11

Therefore, we next review the validity of Potentate Vinson's actions. The Holding Corporation's Articles of Incorporation, as amended in 1987, state in Article XI, §11.2, "This Corporation shall be subject at all times to control by the Evangeline Shrine Club, which is a part of Habibi Temple, A.A.O.N.M.S., of Lake Charles, Louisiana, and the Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America."

This Article makes it absolutely clear that the Holding Corporation was subject to control by the Club. Article I, Paragraph 1.1 of the Club's Bylaws state that the Club "shall be conducted in conformity with the By-Laws and Edicts of Habibi Temple, A.A.O.N.M.S., of Lake Charles, Louisiana . . . and the Imperial Council of the Ancient Arabic Order of the Nobles of the Mistic Shrine for North America." Thus, we find that the Club, and by extension, the Holding Corporation, are subject to the bylaws and edicts of the Habibi Shriners and Shriners International.

Additionally, Shriners International Bylaws, ARTICLE 37, §337.9(C)(3), entitled Shrine Club Holding Corporation, in pertinent part, (emphasis added), states, "[t]he potentate *shall* have power to remove from office in the corporation or association any director or managing officer for disobedience of his orders or for any violation of temple bylaws with respect to the conduct of the affairs of the corporation or association."

Here, the evidence shows that on February 10, 2023, Potentate Vinson decided and resolved that "the current Officers and Directors of Evangeline Club are hereby recognized and confirmed as having been dismissed and removed from such offices." Thus, this removal resolution by Potentate Vinson effectively and immediately removed Appellants as directors and officers of the Club and Holding Corporation.

12

Accordingly, we agree with the trial court that Appellants failed to carry their burden to demonstrate that they had any authority to represent themselves as officers and directors of the Club and Holding Corporation. As such, we find no error in granting the Plaintiffs/Appellees' writ of quo warranto in this matter by the trial court; and thus, we find this assignment of error is without merit.

## ISSUE PRESENTED FOR REVIEW-NUMBER THREE

The third issue presented for review by Appellants is that the trial court improperly went beyond the legal limitations allowed under the law when it ruled that all actions taken by them in their capacity as officers and/or directors of the Club and/or the Holding Corporation since at least February 10, 2023 were found to be without effect, notably the amendment of the Holding Corporation's Articles of Incorporation and Bylaws. Appellants argue that there is nothing within a quo warranto that allows the court to reverse various actions taken while they were validly holding office.

In brief, Appellants discuss the merits of the trial court's findings that the Club was dissolved, and, as such, Appellants were not on the board of directors of the Holding Company, therefore Appellants had no authority to amend the Holding Company's Articles of Incorporation and Bylaws. While the trial court may have stated or written such reasons for its judgment, those reasons are immaterial.

> "[T]the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Bellard v. American Cent. Ins. Co.*, 2007–1335 p. 25 (La.4/18/08), 980 So.2d 654, 671; *Greater New Orleans Expressway Commission v. Olivier*, 2002–2795 p. 3 (La.11/18/03), 860 So.2d 22, 24 ("Appeals are taken from the judgment, not the written reasons for judgment."); La. C.C.P. arts. 1918, 2082 and 2083. Judgments are often upheld on appeal for reasons different than those assigned by the district judges. "The written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed. . . ." *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir.1977).

13

*Wooley v. Lucksinger*, 09-571, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572.

Here, after de novo review in Issue Presented for Review Number Two hereinabove, we found that Appellants failed to carry their burden of proof demonstrating they had authority to represent themselves as officers and directors of the Club and Holding Corporation. This court and the trial court's basis for reaching this same conclusion is immaterial as the judgment appealed from in this matter states, "Gerard Hebert, Daniel Hebert, John Doucet, and Ryan Cormier[] failed to satisfy their burden to demonstrate they have authority to represent themselves as officers and directors of Evangeline Shrine Club and/or Evangeline Shrine Club Holding Corporation since at least February 10, 2023." While the date does coincide with evidence in the record as to when Potentate Vinson removed Appellants as officers and appointed new officers and board members to the Club and Holding Corporation, the basis for the trial court's use of that date is not in the judgment, and, as such, not at issue.

Further, the judgment states that "the actions taken by [Appellants] in their capacity as officers and/or directors of Evangeline Shrine Club and/or the Evangeline Shrine Club Holding Corporation to amend by-laws or articles of incorporation of those entities were without proper authority." Again, we find no error in this aspect of the judgment.

Additionally, and regardless of whether Appellants carried their burden to prove they were validly holding office/officers and on the board of directors for the Holding Corporation, which we find above they have not, evidence in the record of the April 17, 2023 meeting states that only eight of nineteen members were present on a "Zoom video conference phone call." At that April meeting, the eight members voted to allow amendment to the Holding Corporation's Articles of Incorporation and bylaws. This action was clearly invalid as the Holding Corporation's Articles

14

of Incorporation Article IX, §9.4 states (emphasis added), "*No business **shall** be transacted at any regular or special meetings of the membership unless a quorum is present. A quorum shall consist of fifteen (15) members of this Corporation **present in person**.*"

The members at the April meeting not only failed to reach the required fifteen members quorum, but also failed to have the eight members participating in the meeting be "present in person." Accordingly, no member was validly authorized to take any action or to amend the Holding Corporation's Articles of Incorporation or bylaws by any business transacted at that April meeting.

Additionally, according to filings with the Louisiana Secretary of State, the Holding Corporation purportedly changed the Holding Corporation's name to the Evangeline Masonic Club Holding Corporation with the date of said name change being May 30, 2023, and the manner of adoption being "UNANIMOUSLY APPROVED BY SHAREHOLDERS." For the same reasons related above to a lack of quorum, any business conducted at the May 30, 2023 meeting was also invalid, as only six members were present and, again, their presence was not in person.

In summary, we find there is no evidence in the record that Appellants were the valid officers/directors of the Holding Corporation at the time of the amendments, and, moreover, the evidence in the record shows that no quorum was present at the Holding Corporations' meetings of April and May of 2023 wherein the Holding Corporations' Articles of Incorporation and bylaws were purportedly amended. Accordingly, we find no error in the trial court's judgment, and we find no merit to this issue presented for review by Appellants.

## ISSUE PRESENTED FOR REVIEW-NUMBER FOUR

In their final issue presented for review, Appellants argue that the trial court committed error when it granted the Petitioners' writ of mandamus. According to Appellants, the trial court ordered them to immediately deliver all business records, papers, assets and effects related to their roles as officers and/or directors of the Club and/or the Holding Corporation to a nonparty, Habibi Shriners, Potentate Kirby Vinson, and/or those designated by him or acting representatives of Evangeline Shrine Club and Evangeline Shrine Club Holding Corporation, all of which is outside the legal scope of the legal limitations of a quo warranto ruling and beyond the authority allowed by the Louisiana Code of Civil Procedure.

> "An appellate court reviews a trial court's judgment denying a writ of mandamus under an abuse of discretion standard." *Stevens Constr. & Design, L.L.C. v. St. Tammany Fire Prot. Dist. No. 1*, 19-955, pp. 8-9 (La.App. 1 Cir. 7/8/20), 308 So.3d 724, 731, *writ denied*, 20-990 (La. 11/4/20), 303 So.3d 652. Additionally, "[f]indings of fact regarding whether to issue a writ of mandamus are subject to the manifest error standard of review." *Hess v. M & C Ins., Inc.*, 14-962, p. 3 (La.App. 3 Cir. 2/11/15), 157 So.3d 1200, 1203. Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993).

*Zillow, Inc. v. Bealer*, 21-545, p. 6 (La.App. 3 Cir. 2/2/22), 333 So.3d 854, 859, *writ denied*, 22-378 (La. 5/10/22), 337 So.3d 908.

"When the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so. It may declare who is entitled to the office and may direct an election when necessary." La.Code Civ.P. art. 3902. Here, we upheld the trial court's determination that Appellants failed to carry their burden of proving that they had authority to represent themselves as officers and directors of the Club and Holding Corporation. As such, the trial court, per article 3902 "may declare who is entitled to the office." Here, the trial court failed to

16

declare any such officers to succeed Appellants. However, this lack of declaration by the trial court in its judgment is not dispositive of this issue presented for review.

"Mandamus is a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864." La.Code Civ.P. art. 3861. "A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." La.Code Civ.P. art. 3862. "A writ of mandamus may be directed to . . . a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor." La.Code Civ.P.art. 3863.

> A writ of mandamus may be directed to a corporation or an officer thereof to compel either of the following:
>
> (1) The holding of an election or the performance of other duties required by the corporation's articles of incorporation or bylaws, or as prescribed by law.
>
> (2) The recognition of the rights of the corporation's members or shareholders.

La.Code Civ.P.art. 3864(A).

Appellants further argue that there is no evidence in the record that Petitioners are officers of the Holding Corporation. As such, according to Appellants, the trial court erred, by law, in using La.Code Civ.P. arts. 3861-3864 to order them to immediately deliver all business records, papers, assets and effects related to their roles as officers and/or directors of the Club and/or the Holding Corporation to Habibi Temple, a non-party, or Petitioners, as non-members of the Holding Corporation because none of those Articles apply.

After a review of the record, we find evidence in the record shows that Petitioners are in fact the officers of the Club and directors of the Holding Corporation. As we noted and found in Issue Presented for Review Number Two,

17

the Club, and by extension, the Holding Corporation, are subject to the bylaws and edicts of the Habibi Shriners and Shriners International.

Additionally, Shriners International Bylaws, ARTICLE 37, §337.3 **Control**. states, "[t]he Shrine club is under the control of the Potentate of the authorizing temple."

Here, the authorized temple is the Habibi Temple, and its potentate is Kirby Vinson. Accordingly, the Club, and by extension, the Holding Corporation is under the control of Potentate Vinson of Habibi Temple.

On February 10, 2023, Potentate Vinson, of the Habibi Temple, resolved that "the current Officers and Directors of Evangeline Club are hereby recognized and confirmed as having been dismissed and removed from such offices." Potentate Vinson further resolved "the following persons are hereby appointed as the Directors of the Evangeline Shrine Club, A.A.O.N.M.S., effective 9 a.m. on February 10, 2023:

William K. Powell

Thomas Kussmann

James Harvey Smith, Jr.

Joe Kendall Powell, Jr.

David Hyatt

William Sanders

Milton Wisby"

Next, Potentate Vinson resolved "the following persons are hereby appointed as the Officers of the Evangeline Shrine Club, A.A.O.N.M.S., effective 9 a.m. on February 10, 2023:

President: William K. Powell

First Vice President: Thomas Kussmann

Second Vice President: James Harvey Smith, Jr.

Secretary:  Joe Kendall Powell, Jr.

Treasurer:  David Hyatt

Seargent-at-Arms:  William Sanders

Immediate Past Potentate:  Milton Wisby"

Potentate Vinson then resolved "the following persons are hereby appointed as the Directors of the Evangeline Shrine Club Holding Corporation, effective 9 a.m. on February 10, 2023:

William K. Powell

Thomas Kussmann

James Harvey Smith, Jr.

Joe Kendall Powell, Jr.

David Hyatt

William Sanders

Milton Wisby"

Finally, Potentate Vinson resolved "the following persons are hereby appointed as the Officers of the Evangeline Shrine Club Holding Corporation, effective 9 a.m. on February 10, 2023:

President:  William K. Powell

First Vice President:  Thomas Kussmann

Second Vice President:  James Harvey Smith, Jr.

Secretary:  Joe Kendall Powell, Jr.

Treasurer:  David Hyatt

Seargent-at-Arms:  William Sanders

Immediate Past Potentate:  Milton Wisby"

19

Given the control vested to Potentate Vinson over the Club, as granted by Shriners International Bylaws, the evidence in the record supports and mandates this court find that Petitioners are the current officers of the Club and directors and officers of the Holding Corporation. The resolutions made by Potentate Vinson specifically appoint Petitioners as the officers/directors of the Club and Holding Corporation.

Additionally, pursuant to La.Code Civ.P. art. 3863, a writ of mandamus can direct former officers, here Defendants, to deliver papers and effects of their former office to their successor, here the Petitioners. As such, we find the record supports and find no error by the trial court in ordering Appellants to immediately deliver all business records, papers, assets and effects related to their previous roles as members, officers and/or directors of the Evangeline Shrine Club, and/or the Evangeline Shrine Club Holding Corporation, (a/k/a and now the "Evangeline Masonic Club Holding Corporation"), to Petitioners, the acting representatives of the Club and Holding Corporation.

**<u>DECREE</u>**

Appellants, Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert present four issues for review. We find no merit to any of the issues presented. As such, we affirm the trial court's judgment denying Appellants' peremptory exception and granting Appellees' Writ of Quo Warranto and Writ of Mandamus ordering Appellants, Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert, to immediately deliver all business records, papers, assets and any effects related to their previous roles as members, officers and/or directors of the Evangeline Shrine Club, and/or the Evangeline Shrine Club Holding Corporation, (a/k/a or now the "Evangeline Masonic Club Holding Corporation"), to Petitioners, William K.

20

Powell, Thomas Kussmann, and David Hyatt, the acting representatives of the Evangeline Shrine Club, and/or the Evangeline Shrine Club Holding Corporation.

Costs of these proceedings, including this appeal, are assessed to Gerard Hebert, John Doucet, Ryan Cormier, and Daniel Hebert.

**AFFIRMED.**